STATE OF NORTH CAROLINA, EX REL., UTILITIES COMMISSION; CAROLINA POWER & LIGHT COMPANY AND ACME ELECTRIC CORPORATION AND ACME ELECTRIC CORPORATION OF LUMBERTON, NORTH CAROLINA v. LUMBEE RIVER ELECTRIC MEMBERSHIP CORPORATION

No. 6810UC390

(Filed 31 December 1968)

**Utilities Commission § 4;    Electricity § 2—    jurisdiction of Commission where consumer has right to choose supplier**

BROCK, J., dissenting.

APPEAL by Lumbee River Electric Membership Corporation from Utilities Commission Order of 8 May 1968.

This is a complaint proceeding instituted on 6 October 1967 by Lumbee River Electric Membership Corporation (Lumbee) before the North Carolina Utilities Commission against Carolina Power & Light Company (CP&L). In its complaint, Lumbee alleged that CP&L had wrongfully extended its electric lines to a new manufacturing facility owned by Acme Electric Corporation (Acme) in Robeson County, and that by so doing it had unlawfully duplicated Lumbee's existing facilities. Lumbee sought to restrain CP&L from rendering the proposed electric service to Acme and to compel CP&L to remove its newly constructed electric lines. The facts pertinent to this appeal are admitted by the pleadings and stipulations of the parties and are not in substantial dispute.

Lumbee is a duly organized nonprofit electric membership corporation, organized and existing pursuant to G.S., Chap. 117, and is engaged in supplying electricity at retail to its members in and near Robeson County. CP&L is a duly organized public utility corporation engaged in generation, transmission, distribution and sale of electricity in Robeson County and in other areas of North Carolina pursuant to G.S., Chap. 62. Lumbee is a wholesale customer of

CP&L. Both Lumbee and CP&L are electric suppliers as defined by G.S. 62-110.2(a)(3). No service areas have been assigned in Robeson County as between Lumbee and CP&L pursuant to G.S. 62-110.2(c)(1).

Acme is a manufacturing corporation engaged in the business of manufacturing and distributing various types of electrical equipment. On 17 July 1967 Acme acquired a tract of land containing about 36 acres located at the southeastern quadrant of the intersection of Interstate Highway 95 and U. S. Highway 74 in Robeson County for the purpose of building thereon a manufacturing plant. Acme caused the eastern portion of this tract, consisting of approximately 20 acres, to be conveyed to its wholly owned subsidiary, Acme Electric Corporation of Lumberton, which subsidiary corporation proceeded to commence erection thereon of a manufacturing plant building containing approximately 60,000 square feet. Acme will lease this manufacturing plant from its subsidiary and electric service will be in the name of Acme. The Acme plant site is approximately three miles southwest of Lumberton and is outside of any municipality.

At the time Acme acquired its new plant site, Lumbee had a single-phase electric line running along a portion of the northern edge of the Acme property adjacent to highway I-95, serving a tenant house and two motel signs then on the property but which were to be removed to make way for construction of the Acme plant. The Acme plant requires three-phase electric service. Lumbee had an existing three-phase electric line located along but on the opposite side of highway I-95 from the Acme plant site. No part of the Acme plant building is located within 300 feet of the existing Lumbee three-phase line. A portion, but not all, of the Acme plant building is located within 300 feet of Lumbee's existing single-phase line. The Acme plant building is 240 feet long, in its north to south dimension, and extends 62 feet beyond the 300 foot boundary of the Lumbee single-phase line on the east end of the building and fifteen feet beyond the 300 foot boundary on the west end of the plant building.

After it acquired the plant site property, Acme chose CP&L as its electric supplier and requested Lumbee to remove its single-phase line from the premises. On or about 15 August 1967 Acme entered into a contract with CP&L for supplying Acme's industrial electric load requirements. In order to furnish this service CP&L converted 0.6 miles of one of its existing single-phase lines to a three-phase line and installed 3.63 miles of entirely new construction of a new three-phase line. It is this new construction which is the subject matter of the present proceeding.

CP&L filed answer to Lumbee's complaint in which it alleged that it was lawfully entitled to extend its facilities to render service to Acme. CP&L contends that under the express provisions of G.S. 62-110.2(b)(5) Acme is entitled to seek and receive electric service from CP&L and Lumbee is prohibited from rendering electric service to Acme. Acme and its subsidiary petitioned to be permitted to intervene in this proceeding, which petition was granted, and Acme filed answer consistent with the answer of CP&L.

On the admitted and stipulated facts, CP&L and Acme moved to dismiss Lumbee's complaint as a matter of law. From order of the Utilities Commission allowing this motion and dismissing the complaint, Lumbee appealed.

*Edward B. Hipp and Larry G. Ford, for North Carolina Utilities Commission.*

*Sherwood H. Smith, Jr., Charles F. Rouse and W. Reid Thompson, for plaintiff appellee, Carolina Power & Light Company.*

*McLean & Stacy, by H. E. Stacy, Jr., for intervenor appellees, Acme Electric Corporation and Acme Electric Corporation of Lumberton, North Carolina.*

*Crisp, Twiggs & Wells, by William T. Crisp and Hugh A. Wells, for defendant appellant, Lumbee River Electric Membership Corporation.*

PARKER, J.

The complainant in this proceeding, Lumbee River Electric Membership Corporation, contends that it is entitled to have the Carolina Power & Light Company electric service to the Acme premises discontinued and the newly constructed CP&L line removed because such facility is duplicative of Lumbee's electric line facilities which were already in the area. While granting that CP&L may realize a profit in relation to the incremental costs of extending and operating its new three-phase line facilities herein complained of, Lumbee contends that such an extension of CP&L's facilities nevertheless constitute an unnecessary, extravagant and wasteful duplication of facilities, the effect of which is to impose on the general public an aggregate cost that is unnecessary and undesirable. Lumbee contends that the North Carolina Utilities Commission has the legal power to prevent such duplication of electric line facilities on the part of utilities subject to its regulatory jurisdiction and that under the circumstances here presented the Utilities Commission has the legal duty to exercise

that power. A majority of the Utilities Commission concluded, however, that the facts of this case bring it squarely within the provisions of G.S. 62-110.2(b) (5), and that the provisions of that statute require the dismissal of Lumbee's complaint. We agree with that conclusion.

G.S. 62-110.2 was enacted as part of Chap. 287 of the 1965 Session Laws. A principal purpose of that statute was to provide an orderly method for allocation of service areas as among competing suppliers of electricity and thereby to eliminate unnecessary duplication of electric line facilities. For that purpose, G.S. 62-110.2(c) (1) provides that the Utilities Commission "is authorized and directed to assign, as soon as practicable after January 1, 1966, to electric suppliers all areas, by adequately defined boundaries, that are outside the corporate limits of municipalities and that are more than 300 feet from the lines of all electric suppliers as such lines exist on the date of the assignments. . . . The Commission shall make assignments of areas in accordance with public convenience and necessity, considering among other things, the location of existing lines and facilities of electric suppliers and the adequacy and dependability of the service of electric suppliers, but not considering rate differentials among electric suppliers."

When the present proceeding was commenced no electric service area had been assigned in Robeson County by the Utilities Commission as between Lumbee and CP&L. This proceeding, therefore, presents the question of the respective rights of the parties and the powers of the Utilities Commission during the interim period pending assignment of service areas.

G.S. 62-110.2(b) (5) provides as follows:

"(b) In areas outside of municipalities, electric suppliers shall have the rights and be subject to restrictions as follows:

\*　　\*　　\*　　\*　　\*

"(5) Any premises initially requiring electric service after April 20, 1965 which are not located wholly within 300 feet of the lines of any electric supplier and are not located partially within 300 feet of the lines of two or more electric suppliers may be served by any electric supplier which the consumer chooses, unless such premises are located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) hereof, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises."

Acme's new plant building is a "premises" within the definition

of the statute. G.S. 62-110.2(a)(1). It is located outside of a municipality. It initially required electric service after April 20, 1965. It was not located wholly within 300 feet of the lines of any electric supplier and not located partially within 300 feet of the lines of two or more electric suppliers. It was not located wholly or partially within an area assigned to any electric supplier pursuant to G.S. 62-110.2(c). And finally, Acme chose CP&L to be its electric supplier. Thus, the facts of this case bring it squarely within the express and clear provisions of G.S. 62-110.2(b)(5), and under that section Acme had the right to choose CP&L, and CP&L had the right to serve as Acme's supplier of electricity.

This appeal presents essentially the same question as was presented by the appeal in *State of North Carolina, ex rel. Utilities Commission and Duke Power Company v. Union Electric Membership Corporation,* and our decision in that case, handed down this date, is determinative of this case. Since G.S. 62-110.2(b)(5) deals expressly and explicitly with the factual situation here presented, since its language is clear and unambiguous and presents no problem of construction, we must presume that the Legislature intended exactly what the statute says.

The order of the Utilities Commission dismissing the complaint is Affirmed.

BRITT, J., concurs.

BROCK, J., dissents.

BROCK, J., dissenting:

For the reasons stated in my dissent from the majority opinion in *State of North Carolina, ex rel. Utilities Commission, and Duke Power Company v. Union Electric Membership Corporation,* which is filed this same date, I dissent from the majority opinion in this case.