STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, AND CAROLINA POWER & LIGHT COMPANY AND ACME ELECTRIC CORPORATION AND ACME ELECTRIC CORPORATION OF LUMBERTON, NORTH CAROLINA, APPELLEES v. LUMBEE RIVER ELECTRIC MEMBERSHIP CORPORATION, APPELLANT

No. 17

(Filed 9 April 1969)

1. Electricity § 2;    Utilities Commission §§ 2, 4— public utilities — electric suppliers — right of competition

In absence of a valid grant of such right by statute, or by an administrative order issued pursuant to statutory authority, and in absence of a valid contract with its competitor or with the person to be served, a supplier of electric power, or other public utility service, has no territorial monopoly or other right to prevent its competitor from serving anyone who desires the competitor to do so.

**2. Electricity § 2— right to choose vendor of electricity**

Unless compelled by some cogent reason, one seeking electric service should not be denied the right to choose between vendors.

**3. Utilities Commission § 1— police power of the State — certificate of public convenience and necessity**

The police power of the State is broad enough to include a statute providing that a public utility company desiring to serve a new area must obtain from the Utilities Commission a certificate that public convenience and necessity require the proposed extension of its distribution facilities.

**4. Utilities Commission § 4; Electricity § 2— competition between electric suppliers — jurisdiction of Utilities Commission**

The Utilities Commission is a creature of the Legislature and has no authority to restrict competition between suppliers of electricity except insofar as that authority has been conferred upon it by statute.

**5. Utilities Commission § 1— authority of Commission**

The Commission may not by its rule or order forbid the exercise of a right expressly conferred by statute.

**6. Constitutional Law § 11— exercise of the police power**

The legislative body is under no compulsion to exercise the police power of the State to its fullest extent, or to exercise it in a manner which the courts, or an administrative agency, may deem wise or best suited to the public welfare.

**7. Electricity § 2— competition between electric suppliers — determination of policy**

It is for the Legislature, not for the court or the Utilities Commission, to determine whether the policy of free competition between suppliers of electric power or the policy of territorial monopoly or an intermediate policy is in the public interest.

**8. Electricity § 2— competition in rural areas prior to 1965**

Prior to the enactment of G.S. 62-110.2 in 1965, there was no restraint upon competition in rural areas between electric membership corporations and public utility suppliers of electric power except as established by contract.

**9. Electricity § 2— service to customers in rural areas — G.S. 62-110.2(a)(1) — "premises" defined**

"Premises", as that word is defined in G.S. 62-110.2(a)(1), embraces the manufacturing plant of an electric consumer and not the tract upon which it is located; consequently, public membership corporation had no right under G.S. 62-110.2(b)(1) to provide electric service to a plant on the ground that it had served a residence and electric signs previously located on the tract.

**10. Utilities Commission § 4; Electricity § 2— right of rural consumer to choose electric supplier — jurisdiction of Commission**

Where location of manufacturer's plant building was outside a municipality and was not wholly within 300 feet of any line of any electric

supplier, and was not partially within 300 feet of the lines of two or more electric suppliers, manufacturer initially requiring electric service after April 20, 1965 had the right to choose public utility, rather than electric membership corporation, as its supplier of electricity; and the Utilities Commission is not authorized to forbid the public utility to serve the plant merely because the electric membership corporation desires to perform the service and can reach the plant by relatively short extension of its lines across a highway while the public utility must build approximately four miles of line, substantially duplicating membership corporation's line, in order to reach the plant. G.S. 62-110.2(b)(5).

**11. Statutes § 5— rule of construction — particular v. general statute**

Section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application, and especially so where the specific provision is the later enactment.

**12. Statutes § 5— provisions in pari materia**

Although statutes dealing with the same subject matter must be construed *in pari materia* and harmonized to give effect to each, yet when the section dealing with a specific matter is clear and understandable on its face, it requires no construction.

**13. Electricity § 2— assignment of rural territory — construction of statute**

Where provisions of G.S. 62-110.2 relating to assignment of electric service territory in rural areas are clear and understandable on their face, the court is not required to construe this statute in connection with other provisions of G.S. Ch. 62 relating to powers of the Utilities Commission to regulate public utilities.

APPEAL by Lumbee River Electric Membership Corporation from the Court of Appeals.

Lumbee River Electric Membership Corporation, hereinafter called Lumbee, instituted this proceeding in the North Carolina Utilities Commission by filing in a single document a complaint against Carolina Power & Light Company, hereinafter called CP&L, and an application for an assignment to Lumbee of a described area in Robeson County as its electric service area. The Utilities Commission entered its order separating the two into independent proceedings and setting the complaint against CP&L for hearing. Lumbee did not except to that order, and all subsequent proceedings, including the present appeal, have been and are upon the theory that nothing but the complaint against CP&L is involved. CP&L filed its answer thereto. Acme Electric Company, hereinafter called Acme, was permitted by the Utilities Commission to intervene and filed its answer in support of the position taken by CP&L.

The Utilities Commission heard no evidence, but, upon facts

stipulated by the parties and admissions in the pleadings, dismissed the complaint, Commissioners Eller and McDevitt dissenting. Lumbee appealed to the Court of Appeals which affirmed the order of the commission, its opinion being reported in 3 N.C. App. 318, Brock, J., dissenting.

The material facts, summarized, are these:

Lumbee, a non-profit electric membership corporation, organized pursuant to Ch. 117 of the General Statutes, supplies electric power to its members in Robeson County and nearby areas. CP&L, a public utility corporation, carries on for profit in Robeson County, and elsewhere in North Carolina, the business of supplying electric power to the public. Lumbee purchases substantially all of its power at wholesale rates from CP&L and so is a CP&L rate payer. Acme is a manufacturer of electrical equipment. The Utilities Commission has not made any assignment of territories in Robeson County to CP&L or to Lumbee or to other suppliers as service areas pursuant to G.S. 62-110.2(c).

Acme, after negotiations with CP&L, acquired a tract of 36 acres in Robeson County on the east side of Highway I-95 and the north side of U. S. Highway 74. At the time of Acme's acquisition of this site, Lumbee owned and operated a three-phase power line running along U. S. Highway 74 and thence along and near to the west boundary of Highway I-95, across from the site so acquired by Acme, and also a single-phase line running therefrom, across the highway right-of-way into and upon the western portion of the land so acquired by Acme. The purpose and use of the single-phase line was to supply electric power to a tenant house and two signs all then located upon the site but subsequently removed in the construction of Acme's plant. The single-phase line was then removed by Lumbee at Acme's request, without prejudice to any right of Lumbee to supply electricity to the plant.

Acme conveyed a portion of the tract to its wholly owned subsidiary. The subsidiary built thereon a large building, which it then leased to Acme for the operation therein by Acme of its manufacturing business. The larger part of this building lies within 300 feet of the former location of Lumbee's single-phase line, but a portion of it is more than 300 feet from the former location of that line and all of it is more than 300 feet from Lumbee's three-phase line west of Highway I-95, that along U. S. Highway 74 being more distant.

Acme contracted with CP&L to take all of its electric power at this plant from CP&L. Acme requires three-phase electric service.

To serve Acme it was necessary for CP&L to construct 3.63 miles of new three-phase line and to convert 0.6 miles of single-phase line to three-phase line. Substantially all of this CP&L line runs along U. S. Highway 74, just across the highway from Lumbee's three-phase line. For Lumbee to serve the Acme plant would require a relatively short extension of its existing three-phase line across Highway I-95. The point of connection of the CP&L line, so extended, with the Acme plant is more than 300 feet from the former location of Lumbee's single-phase line.

In its letter to Lumbee requesting the removal of the single-phase line and advising Lumbee of Acme's contract with CP&L, Acme stated that its reasons for desiring service by CP&L were that it desired to be served by a regulated public utility and that CP&L had been of assistance to Acme in locating and selecting this site for its plant. In its answer Acme alleged CP&L was better qualified by experience and facilities to supply an industrial plant such as Acme's than was Lumbee.

The complaint alleged, in substance, such of the above facts as had occurred at the time it was filed. It also alleged Lumbee was ready, able and willing to supply adequately all the needs of the Acme plant for electric service, that CP&L had begun the construction of its above mentioned line and that it would be an unnecessary and economically wasteful and unsightly construction. Lumbee prayed the Utilities Commission to restrain CP&L from further construction of such facilities and from rendering service to the Acme plant and to require CP&L to remove the facilities which had then been constructed for that purpose.

Lumbee moved for a temporary restraining order, which was denied by the commission. The construction of the line was completed by CP&L and it supplied electric service over these facilities to the contractor constructing the Acme plant. CP&L and Acme then moved to dismiss the complaint as a matter of law upon the stipulated facts and the pleadings. The commission first denied this motion and then, upon reconsideration, allowed it.

The commission found as a fact: "Lumbee does not allege, and counsel for Lumbee conceded that it does not propose to show, that CP&L will not make a profit or earn a return on the facilities constructed by it to furnish electric service to the Acme premises." While this is not a fact stipulated, it is true that the complaint does not contain any allegation with reference to this matter.

The commission concluded: "There is no question but that, under G.S. 62-110.2(b)(5), CP&L has the right to provide electric service to the Acme plant or 'premises' in this case. * * * [W]hether

or not there may be duplication, is not an issue in this proceeding,. * * * [E]ven if duplication should exist it would not deprive the consumer of its statutory right to choose its electric supplier or deprive CP&L of its statutory right to serve."

*Crisp, Twiggs & Wells* for appellant.

*Edward B. Hipp* and *Larry G. Ford* for North Carolina Utilities Commission, appellee.

*Sherwood H. Smith, Jr., Charles F. Rouse* and *W. Reid Thompson* for Carolina Power & Light Company, appellee.

*McLean & Stacy* for intervenor appellee.

LAKE, J.

Acme desires to purchase from CP&L the electric power it requires for the operation of its manufacturing plant. CP&L desires to sell that power to Acme. They have entered into a contract for such purchase and sale. We are not required to determine whether Acme could compel an unwilling CP&L to serve it.

Lumbee is a customer of CP&L. We are not, however, presently required to determine whether, as such customer, it may bring a proceeding before the Utilities Commission to prevent CP&L from constructing an extension of CP&L's facilities on the theory that such extension will be unprofitable and, therefore, may, at some future date, make it necessary for CP&L to charge Lumbee rates higher than CP&L would otherwise need in order to earn a fair return on the fair value of CP&L's total plant. Lumbee does not proceed here upon that theory. While it does not stipulate that CP&L will derive from its service to Acme a fair return upon that portion of its total rate base attributable to such service, Lumbee does not allege the contrary. It proceeds here upon the theory that it, as a supplier of electric power, has the exclusive right to serve Acme though Acme prefers another supplier.

Again, we do not presently have before us the question of Lumbee's right to have the Utilities Commission assign to Lumbee, as its exclusive service area, any territory pursuant to G.S. 62-110.2(c). That statute confers upon the commission the authority, and imposes upon it the duty, to make such assignments to electric membership corporations, such as Lumbee, and to electric utility companies, such as CP&L, of all territory outside the corporate limits of municipalities and more than 300 feet from the lines of any such supplier. It provides that "in order to avoid unnecessary dupli-

cation of electric facilities," the commission shall, "as soon as practicable after January 1, 1966," so assign all such territory "in accordance with public convenience and necessity." The record before us shows that, despite the passage of three years, there has been no such division of such territory in Robeson County, either by agreement of the suppliers or by order of the commission. Originally, in this proceeding Lumbee combined its prayer for a restraining order against CP&L with its application for an order so assigning to Lumbee the territory which includes the Acme plant. However, Lumbee did not except to the order of the commission which separated its application for such assignment of territory from its complaint against CP&L. Only the latter was heard by the commission and it alone is now before us.

Thus, the question before us is whether Lumbee, as a competitor of CP&L, has a right, in the absence of such assignment of territory by the commission and in the absence of any contract between Lumbee and CP&L or between Lumbee and Acme, to an order by the Utilities Commission forbidding CP&L to serve Acme in accordance with Acme's request. Lumbee asserts that it is entitled to the entry of such order solely because, at the time Acme's initial need for service arose, Lumbee had in operation a single-phase power line within 300 feet of a portion of Acme's plant, and a three-phase line a short distance further therefrom, whereas CP&L had to build approximately four miles of line, substantially paralleling and duplicating Lumbee's line, in order to reach the Acme plant.

[1, 2]   In the absence of a valid grant of such right by statute, or by an administrative order issued pursuant to statutory authority, and in the absence of a valid contract with its competitor or with the person to be served, a supplier of electric power, or other public utility service, has no territorial monopoly, or other right to prevent its competitor from serving anyone who desires the competitor to do so. In *Membership Corp. v. Power Co.*, 258 N.C. 278, 128 S.E. 2d 405, this Court said, "Unless compelled by some cogent reason, one seeking electric service should not be denied the right to choose between vendors." In *Membership Corp. v. Light Co.*, 255 N.C. 258, 120 S.E. 2d 749, and in *Light Co. v. Electric Membership Corp.*, 211 N.C. 717, 192 S.E. 105, this Court recognized that, except as restricted by contract, electric membership corporations and public utility companies supplying electricity are free to compete in the rural areas of this State, notwithstanding the fact that such competition may result in substantial duplication of electric power lines and other facilities.

[3, 4]    It is well settled that the police power of the State is broad
enough to include a statute providing that a public utility company,
desiring to serve a new area, must obtain from the Utilities Com-
mission a certificate that public convenience and necessity requires
the proposed extension of its distribution facilities. It is, however,
equally well settled that the Utilities Commission is a creature of
the Legislature and has no authority to restrict competition between
suppliers of electricity, except insofar as that authority has been
conferred upon it by statute. *Utilities Com. v. Motor Lines,* 240
N.C. 166, 81 S.E. 2d 404; *Utilities Com. v. Greyhound Corp.,* 224
N.C. 293, 29 S.E. 2d 909.

[5-7]    Obviously, the commission may not, by its rules or order,
forbid the exercise of a right expressly conferred by statute. See
*Utilities Com. v. R. R.,* 224 N.C. 283, 29 S.E. 2d 912. The legislative
body is under no compulsion to exercise the police power .of the
State to its fullest extent, or to exercise it in a manner which the
courts, or an administrative agency, may deem wise or best suited
to the public welfare. *Zopfi v. City of Wilmington,* 273 N.C. 430,
160 S.E. 2d 325; *In Re Markham,* 259 N.C. 566, 131 S.E. 2d 329. It
is for the Legislature, not for this Court or the Utilities Commission,
to determine whether the policy of free competition between sup-
pliers of electric power or the policy of territorial monopoly or an
intermediate policy is in the public interest. If the Legislature has
enacted a statute declaring the right of a supplier of electricity to
serve, notwithstanding the availability of the service of another sup-
plier closer to the customer, neither this Court nor the Utilities Com-
mission may forbid service by such supplier merely because it will
necessitate an uneconomic or unsightly duplication of transmission
or distribution lines. In such event, it is immaterial whether the
Legislature has imposed upon such supplier a correlative duty to
serve.

[8]    In the light of these principles, we turn to G.S. 62-110.2, en-
acted in 1965, prior to which time there was no restraint upon com-
petition in rural areas between electric membership corporations '
and public utility suppliers of electric power except as established
by contract. *Membership Corp. v. Light Co., supra.*

The former absence of statutory provisions restricting competi-
tion between electric membership corporations and public utility
suppliers of electric power gave rise to many contracts between
these two types of suppliers designed to fix their respective territorial
rights, which contracts, in turn, gave rise to much litigation. See
*Membership Corp. v. Power Co., supra.* In the hope of putting an

end to or reducing this turmoil, the 1965 Legislature enacted G.S. 62-110.2, the language of which was the result of collaboration and agreement between the two types of suppliers.

Subsection (c) of this statute provides for the assignment of territory by the commission above mentioned. Subsection (b) of this statute sets forth in ten numbered paragraphs specific rules governing the right of suppliers to serve in situations there described. Provisions pertinent to this appeal are as follows:

"(b)  In areas outside of municipalities, electric suppliers shall have rights and be subject to restrictions as follows:

"(1)  Every electric supplier shall have the right to serve all premises being served by it, or to which any of its facilities for service are attached, on April 20, 1965.

"(2)  Every electric supplier shall have the right, subject to subdivision (4) of this subsection, to serve all premises initially requiring electric service after April 20, 1965 which are located wholly within 300 feet of such electric supplier's lines as such lines exist on April 20, 1965, except premises which, on said date, are being served by another electric supplier or to which any of another electric supplier's facilities for service are attached.

"(3)  Every electric supplier shall have the right, subject to subdivision (4) of this subsection, to serve all premises initially requiring electric service after April 20, 1965 which are located wholly within 300 feet of lines that such electric supplier constructs after April 20, 1965 to serve consumers that it has the right to serve, except premises located wholly within a service area assigned to another electric supplier pursuant to subsection (c) hereof.

"(4)  Any premises initially requiring electric service after April 20, 1965, which are located wholly or partially within 300 feet of the lines of one electric supplier and also wholly or partially within 300 feet of the lines of another electric supplier, as each of such supplier's lines exist on April 20, 1965, or as extended to serve consumers that the supplier has the right to serve, may be served by such one of said electric suppliers which the consumer chooses, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises.

"(5)  Any premises initially requiring electric service after April 20, 1965 which are not located wholly within 300

feet of the lines of any electric supplier and are not located partially within 300 feet of the lines of two or more electric suppliers may be served by any electric supplier which the consumer chooses, unless such premises are located wholly or partially within an area assigned to an electric supplier pursuant to subsection (c) hereof, and any electric supplier not so chosen by the consumer shall not thereafter furnish service to such premises.

\* \* \*

"(10) No electric supplier shall furnish electric service to any premises in this State outside the limits of any incorporated city or town except as permitted by this section \* \* \*."

[9] Subsection (a) (1) of this statute defines "premises" to mean "the building, structure, or facility to which electricity is being or is to be furnished," subject to a proviso not presently material. Consequently, it is the plant of Acme, and not the tract upon which it is located, which constitutes the "premises" here involved, as that term is used in subsection (b). Thus, paragraph (1) of subsection (b), above quoted, does not confer upon Lumbee the right to serve the Acme plant by reason of Lumbee's former service to the residence and the electric signs previously located on this tract. For the same reason, the "premises" here involved are located partially but not wholly within 300 feet of where Lumbee's single-phase line was when Acme's initial need for electric service arose. Consequently, the right of CP&L to construct its line here in question and to serve the Acme plant is governed by paragraphs (3), (4) and (5), above quoted.

CP&L's right, if any, under paragraphs (3) and (4) of subsection (b), to serve Acme arises by reason of its extension of its lines after April 20, 1965, for the purpose of serving Acme and, therefore, depends upon the right of CP&L to extend its lines for that purpose. Thus, the controlling provision of the statute is paragraph (5).

[10] At the time this proceeding was commenced, and prior thereto, the location of the Acme plant was not wholly within 300 feet of any line of any electric supplier, nor was it partially within 300 feet of the lines of two or more electric suppliers. As of that time, paragraph (5) of subsection (b) of the statute plainly and unequivocally established the right of Acme to choose CP&L as its supplier and the right of CP&L to serve this plant if Acme so chose it. Acme did so choose. Thus, the line constructed to the plant by CP&L

after April 20, 1965 was constructed to serve a consumer CP&L had the right to serve. This brought paragraphs (3) and (4) of subsection (b) of the statute into operation. Since the statute expressly conferred upon CP&L the right to serve this plant, the Utilities Commission was not authorized to forbid CP&L to do so merely because Lumbee desired to perform the service and could reach the plant by an extension of its lines substantially shorter than the lines required to be built by CP&L.

We express no opinion as to the authority of the Utilities Commission, on its own motion or upon complaint, to forbid construction by a public utility company for the purpose of serving a customer located similarly to Acme upon an allegation and a showing that such construction would be so wasteful of that supplier's own financial resources as to endanger its future capacity to serve adequately at reasonable rates. Lumbee does not allege such a situation.

[11-13]  Lumbee contends that since the Act of 1965 inserted G.S. 62-110.2 into the chapter of the General Statutes relating to the regulation of public utility companies, this statute must be read in connection with other provisions of that chapter and, consequently, the powers conferred upon the commission by those other sections apply also to the specific situations dealt with in G.S. 62-110.2. It is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application. *Utilities Commission v. Coach Co.,* 236 N.C. 583, 73 S.E. 2d 562. In such situation the specially treated situation is regarded as an exception to the general provision. *Young v. Davis,* 182 N.C. 200, 108 S.E. 630. This rule of construction is especially applicable where the specific provision is the later enactment. *Food Stores v. Board of Alcoholic Control,* 268 N.C. 624, 151 S.E. 2d 582. It is true, as contended by Lumbee, that when statutes "deal with the same subject matter, they must be construed in *pari materia* and harmonized to give effect to each." *Gravel Co. v. Taylor,* 269 N.C. 617, 153 S.E. 2d 19. When, however, the section dealing with a specific matter is clear and understandable on its face, it requires no construction. *Highway Commission v. Hemphill,* 269 N.C. 535, 153 S.E. 2d 22; *Davis v. Granite Corporation,* 259 N.C. 672, 131 S.E. 2d 335; *Long v. Smitherman,* 251 N.C. 682, 111 S.E. 2d 834. In such case, "the Court is without power to interpolate or superimpose conditions and limitations which the statutory exception does not of itself contain." *Board of Architecture v. Lee,* 264 N.C. 602, 142 S.E. 2d 643.

UTILITIES COMM. *v.* ELECTRIC MEMBERSHIP CORP.

It is for the Legislature, not the Court or the Utilities Commission, to determine whether a special provision should be made for the regulation of competition between electric membership corporations and public utility companies rendering electric service. Here, the Legislature has made that determination in clear, unequivocal terms. Consequently, it was unnecessary for the Utilities Commission to inquire into or determine the general economic or esthetic effect and advisability of the duplication of Lumbee's line by CP&L. In view of the policy expressly declared by the Legislature, such determination by the commission would have been immaterial. Consequently, the commission properly dismissed the complaint without making such inquiry.

Affirmed.