DOMESTIC ELECTRIC SERVICE, INC. v. THE CITY OF ROCKY MOUNT AND COKEY APARTMENTS, LTD.

No. 737SC806

(Filed 9 January 1974)

1. Statutes § 5— construction of statutes

In construing statutes the court should always give effect to the legislative intent; to determine the legislative intent, a court may consider the purpose of the statute and the evils it was designed to remedy, the effect of proposed interpretations of the statute, and the traditionally accepted rules of statutory construction.

2. Electricity § 2; Utilities Commission § 4— assigned electric territory — new customers — applicability of statute to municipality

G.S. 62-110.2(b) (8) applies to municipalities as well as to public utilities and electric membership corporations and prevents a municipality from providing electricity for new customers in a territory assigned by the Utilities Commission to an electric utility company.

3. Electricity § 2; Utilities Commission § 4— electric service — new customers in area assigned to utility — authority of municipality to provide service — controlling statute

Since G.S. 62-110.2 deals specifically with electric service and the assignment of customers to particular suppliers while G.S. 160A-312 is a broad general statute relating to all municipal "public enterprises," G.S. 62-110.2 controls in the determination of whether a municipality may provide electricity for new customers in an area outside the municipality which has been assigned by the Utilities Commission to an electric utility company.

Judge BRITT dissents.

APPEAL by plaintiff from *Lanier, Judge,* 14 August 1973 Session of Superior Court of NASH County.

Domestic Electric Service, Inc. (hereinafter referred to as Domestic) is a public utility company furnishing electric service to customers in designated areas of Nash, Edgecombe and Wilson Counties. Pursuant to G.S. 62-110.2(c) the Utilities Commission has assigned to it a territory southeast of Rocky Mount. Within that territory, at a point just southeast of the city limits of Rocky Mount, Cokey Apartments, Ltd. (hereinafter referred to as Cokey) has built a group of apartment buildings. In May 1973 Cokey submitted an application for electric service to the City of Rocky Mount (hereinafter referred to as City), which operates its own electric system. Domestic then filed suit against City and Cokey, seeking an injunction prohibiting City from furnishing electricity to Cokey. The case was heard in the Superior Court of Nash County, and the court gave judgment

for defendants, holding that Cokey was free to choose either Domestic or City as its electric supplier. Domestic appealed.

*Battle, Winslow, Scott & Wiley, by Thomas L. Young, for plaintiff appellant.*

*Tally & Tally, by J. O. Tally, Jr., and Spruill, Trotter & Lane for defendant appellees.*

BALEY, Judge.

The issue in this case is one of statutory construction. Domestic contends that under G.S. 62-110.2(b)(8) and (c)(1) it has the exclusive right to provide electricity for all new customers within its assigned territory. Defendants contend that Domestic's right is not exclusive; that G.S. 62-110.2 is inapplicable to municipalities; and that under G.S. 160A-312 City has the right to sell electricity to Cokey. G.S. 62-110.2(b)(8) and (c)(1) read as follows:

"(b)(8) Every electric supplier shall have the right to serve all premises located wholly within the service area assigned to it pursuant to subsection (c) hereof.

"(c)(1) In order to avoid unnecessary duplication of electric facilities, the Commission is authorized and directed to assign . . . to electric suppliers all areas, by adequately defined boundaries, that are outside the corporate limits of municipalities . . . . "

G.S. 160A-312 provides:

"[A] city may extend and operate any public enterprise outside its corporate limits within reasonable limitations . . . . "

[1] In construing statutes the courts should always give effect to the legislative intent. *State v. Johnson,* 278 N.C. 126, 179 S.E. 2d 371; *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2; *Powell v. State Retirement System,* 3 N.C. App. 39, 164 S.E. 2d 80. To determine the legislative intent, a court may consider the purpose of a statute and the evils it was designed to remedy. *Puckett v. Sellars,* 235 N.C. 264, 69 S.E. 2d 497; *State v. Lovelace,* 228 N.C. 186, 45 S.E. 2d 48; *Shipyard, Inc. v. Highway Comm.,* 6 N.C. App. 649, 171 S.E. 2d 222, *cert. denied,* 276 N.C. 327. A court may also take into account the effect of proposed interpretations of the stat-

ute, since a contruction that leads to an anomalous or illogical result probably was not intended by the legislature. *See Town of Hudson v. City of Lenoir,* 279 N.C. 156, 181 S.E. 2d 443; *State v. Spencer,* 276 N.C. 535, 173 S.E. 2d 765. Finally, a court may consider traditionally accepted rules of statutory construction, such as the rule that when a general and a special statute are in conflict, the special statute is controlling.

[2]   The stated purpose of G.S. 62-110.2 is "to avoid unnecessary duplication of electric facilities." Before 1965, municipalities, public utilities and electric membership corporations were free to compete against each other for customers. In seeking to serve customers in the same geographical area, they built electric power lines that paralleled and crossed each other. To remedy this uneconomical duplication, in 1965 the General Assembly passed G.S. 62-110.2, applying to rural areas, and G.S. 160A-331 to -338, applying to municipalities. Both these statutes were part of the same act (Ch. 287, [1965] N.C. Sess. L. 328), and both sought to eliminate the wasteful duplication of power lines by assigning territories to specific suppliers of electricity. *See generally Utilities Comm. v. Electric Membership Corp.,* 276 N.C. 108, 171 S.E. 2d 406; *Utilities Comm. v. Electric Membership Corp.,* 3 N.C. App. 318, 164 S.E. 2d 895, *aff'd,* 275 N.C. 250, 166 S.E. 2d 663. Parallel electric lines are equally uneconomical regardless of who owns them; they do not cease to be wasteful and become beneficial merely because one line is operated by a municipality instead of a utility company or a cooperative. To interpret G.S. 62-110.2 as applying only to utilities and co-operatives, and not to municipalities, would undercut the purpose of the statute.

Further support for Domestic's position comes from an examination of the consequences that would result from a decision for defendants. Presumably, the primary purpose of a municipal electrical system is to serve customers within the boundaries of the municipality, while a utility company or co-operative is chiefly concerned with customers outside the city limits. Yet under defendants' interpretation of G.S. 62-110.2, an entirely contrary result is reached. G.S. 160A-332(a) provides for a 300-foot protected area around the lines of any utility company operating within a city. The city cannot serve any premises inside the city limits and wholly within 300 feet of the utility company's lines, unless the premises are also wholly or partially within 300 feet of the city's lines. But under defend-

ants' interpretation, the city may serve any premises outside the city limits. In other words, the city is more severely restricted within its own boundaries than outside its boundaries.

A diagram will clearly show how illogical this result is. In the diagram below, the dotted area is within the city limits of City C; the remainder of the diagram has been assigned to U Co., a public utility. The heavy black line represents one of City C's electric lines, while the dashed line represents an electric line of U Co. The crosshatched area represents U Co's protected area under G.S. 160A-332(a). Points A and B are newly constructed buildings needing electric service.

Under defendants' interpretation, City C can furnish electric service for Building B which is outside the city, but not to Building A which is within the city. If the city annexes Building B, it loses its right to provide electricity for the building. Almost certainly the General Assembly did not intend to bring about such an anomalous result.

[3] Domestic's proposed interpretation of the statute is consistent with generally accepted rules of statutory construction. It has often been held that when a general statute and a special or particular statute are in conflict, the special or particular statute is controlling. The special statute is viewed as an exception to the provisions of the general statute, since it is

presumed that the General Assembly did not intend to create a conflict. *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 166 S.E. 2d 663; *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22; *Davis v. Granite Corporation*, 259 N.C. 672, 131 S.E. 2d 335. G.S. 62-110.2 deals specifically with electric service and the assignment of customers to particular suppliers, while G.S. 160A-312 is a broad general statute relating to all municipal "public enterprises," including bus lines, cable television systems and airports. G.S. 62-110.2, therefore, is the controlling statute in this case.

Defendants cite *Dale v. Morganton*, 270 N.C. 567, 155 S.E. 2d 136, and *Utilities Comm. v. Town of Pineville*, 17 N.C. App. 522, 195 S.E. 2d 76, *cert. denied*, 283 N.C. 394, 196 S.E. 2d 277, as holding that municipalities are outside the jurisdiction of the Utilities Commission. It is true that municipalities are not subject to comprehensive and detailed regulation by the Utilities Commission, as public utilities and co-operatives are, and the *Dale* and *Pineville* courts so held. But the General Assembly, which created the Utilities Commission and municipalities, certainly has power to subject one aspect of municipal utility operation—the extension of service to new customers—to Utilities Commission regulation. In adopting G.S. 62-110.2 and G.S. 160A-331 to -338 as parts of Ch. 287, [1965] N. C. Sess. L. 328, it clearly took this step. Thus the *Dale* and *Pineville* decisions, while unquestionably correct in their holding, do not apply to the present case.

Defendants also contend that the fact that G.S. 62-110.2 does not provide for assignment of territories to municipalities shows that the statute was drafted to exclude municipalities. This argument fails to take into account the fact that G.S. 62-110.2 was passed together with G.S. 160A-331 to -338, as part of the same act. Considered together, the two statutes cover the entire state and reflect the interests of municipalities, utility companies and co-operatives. They form a unified plan for eliminating duplication of electric facilities by assigning territories to particular suppliers. While it is true that G.S. 62-110.2 gives municipal electrical systems a minor role in rural areas, G.S. 160A-331 to -338 gives them a predominant position within the city limits. It would not appear logical that the legislature intended to give municipalities protection within the city limits (except for the 300 foot area adjacent to lines of an electric supplier already operating within the city) and then permit

municipalities to extend lines and compete in territory assigned to a utility or co-operative when the utilities and co-operatives are restricted from competing with each other within the assigned area. The clear purpose of the whole statute is to prevent wasteful duplication of competing facilities, and thereby serve the public interest.

In *Capital Electric Power Association v. City of Canton*, 274 So. 2d 665 (Miss. 1973), the Supreme Court of Mississippi reached a similar conclusion upon comparable facts. The City of Canton was seeking to serve a customer in territory assigned by the Public Service Commission to Capital Electric Power Association. The court held that notwithstanding the fact that the city was not subject to regulation by the Public Service Commission as to its own electric system, it could not invade territory assigned to a utility company by the Public Service Commission. The city was enjoined from extending electric service within the territory assigned to Capital and the exclusive right granted by the Public Service Commission for service within a designated territory was declared to be "a valuable right which may be protected by the courts." *Id.* at 670.

[2] It is our view that G.S. 62-110.2(b) (8) gives Domestic the exclusive right to provide electricity for all new customers in the territory assigned to it by the Utilities Commission. The decision of the trial court allowing Cokey to purchase electricity from City was erroneous and is reversed.

Reversed.

Judge PARKER concurs.

Judge BRITT dissents.