IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-770

Filed 18 April 2023

Onslow County, No. 21 CVS 4010

D.W., a minor, by and through his parent, Jessie Sanders, Petitioners,

v.

ONSLOW COUNTY BOARD OF EDUCATION, Respondent.

Appeal by petitioners from order entered 22 April 2022 by Judge Henry L. Stevens, IV in Superior Court, Onslow County. Heard in the Court of Appeals 27 February 2023.

*Legal Aid of North Carolina, Inc., by Carlton Powell, Jennifer Richelson Story, Crystal Ingram, Celia Pistolis, and Kilpatrick Townsend & Stockton LLP, by Carl Sanders and Callie Thomas, for petitioners-appellants.*

*Tharrington Smith, L.L.P, by Stephen G. Rawson, Daniel Clark, and Deborah R. Stagner, for respondent-appellee.*

*Peggy D. Nicholson and Crystal Grant, for amicus curiae Duke University School of Law Children's Law Clinic.*

*Aly Martin and Hayley Lampkin Blyth, for amicus curiae Council for Children's Rights.*

STROUD, Chief Judge.

D.W., a minor, by and through his parent, Jessie Sanders, (collectively "Petitioners") appeals from order entered 22 April 2022 dismissing their petition for judicial review for lack of subject matter jurisdiction. We affirm.

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

## I.  Background

D.W. was a fifteen-year-old student at Northside High School ("NHS") in the Onslow County Public School System in 2021.  D.W. was a new student and felt he was targeted by other students while riding on the bus and while in the hallways.

D.W. was accused of instigating a fight between his sister and another female on 27 August 2021.  D.W. received a five-day suspension.  His mother, Sanders asked NHS staff to assign a social worker to assist her son and to institute a behavior plan for him.  D.W. was referred to PRIDE in North Carolina, Inc., a private organization, which provides services to individuals with mental illness, developmental disabilities, and behavioral disorders.  NHS staff told Sanders and D.W. that he would be removed from NHS if he became involved in another fight.  D.W. served the five-day suspension from his sister's fight and returned to school.

Two weeks later, D.W. and another student exchanged words on the school bus to NHS on 13 September 2021.  D.W. alleged the other student had called him racial slurs.  The other student proposed they meet to fight and the two boys later met in a school bathroom to fight.  The fight ended when a teacher entered the bathroom.  D.W. was issued a 10-day out-of-school suspension, and he was referred to Onslow County Schools' alternative school, Onslow County Learning Center ("OCLC").

Sanders believed D.W.'s placement at OCLC would be temporary and he would return to NHS after completing his 10-day suspension.  While attending class at OCLC, a teacher told D.W. that he was required to stay at OCLC until at least

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

January. Sanders requested an appeal hearing before members of the school board in late September and again requested an appeal on 6 October 2021.

Respondent convened a hearing panel on 18 November 2021. Respondent issued a written decision affirming D.W.'s placement at OCLC "until such time as he has met his established goals[.]" Respondent sent a letter to Sanders informing her of her purported "right to appeal the Board panel's decision on placement at the OCLC by filing a petition for judicial review in the Superior Court of Onslow County." Petitioners filed a petition for judicial review on 17 December 2021. In a later letter dated 28 January 2022, Respondent asserted Saunders had no right to seek judicial review of the Board's decision.

Respondent filed a motion to dismiss on 17 February 2022. Following a hearing on 18 April 2022, the superior court allowed the motion to dismiss for lack of subject matter jurisdiction by order dated 22 April 2022. Petitioner appeals. Respondent has filed a motion to dismiss Petitioner's appeal as moot, alleging D.W. had graduated 7 February 2023 with a regular North Carolina high school diploma and is no longer attending the Onslow County Public School System.

## II.    Jurisdiction

This Court possesses jurisdiction pursuant to North Carolina General Statute § 7A-27(b) (2021).

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

### III.   Respondent's Motion to Dismiss as Moot

In this case, the entire substantive issue on appeal is subject matter jurisdiction.  Petitioner contends the Superior Court has subject matter jurisdiction under North Carolina General Statute § 115C-45(c) (2021) to review the Board's ruling; Respondent disagrees.  Respondent also filed a motion to dismiss this appeal as moot, and mootness also raises an issue of subject matter jurisdiction.  *See Yeager v. Yeager*, 228 N.C. App. 562, 565-66, 746 S.E.2d 427, 430 (2013) ("[A] moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim[.]" (citing, *inter alia*, *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585-86, 347 S.E.2d 25, 30 (1986))).  As a result, we believe it is prudent first to consider whether we can address the *substantive legal* jurisdictional issue—subject matter jurisdiction under Section 115C-45(c)—before the jurisdictional issue based upon facts that develop "during the course of the proceedings" raised by a motion to dismiss as moot.  *In re Peoples*, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978).

> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law. *Benvenue Parent-Teacher Association v. Nash County Board of Education*, 275 N.C. 675, 170 S.E.2d 473 (1969); *Crew v. Thompson*, 266 N.C. 476, 146 S.E.2d 471 (1966); *In re Assignment of School Children*, 242 N.C. 500, 87 S.E.2d 911 (1955); *Savage v. Kinston*, 238 N.C. 551, 78 S.E.2d 318 (1953); 1

> Strong's N.C. Index 3rd *Actions* § 3, *Appeal & Error* § 9 (1976).
>
> Unlike the question of jurisdiction, the issue of mootness is not determined solely by examining facts in existence at the commencement of the action. If the issues before a court or administrative body become moot at any time during the course of the proceedings, the usual response should be to dismiss the action. *Allen v. Georgia*, 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897); *People ex rel. Wallace v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769, *cert. denied* 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952); 20 Am.Jur.2d *Courts* § 81 (1965).

*Id.* at 147-48, 250 S.E.2d at 912. Thus, "the usual response should be to dismiss" as moot based upon facts that develop during the course of litigation, if the issue is actually moot and there is no other justification to rule upon the issue, because courts should rule only on real controversies. *Id.* at 148, 250 S.E.2d at 912.

In this scenario—where mootness and the substantive issue of jurisdiction under North Carolina General Statute § 115C-45(c) both involve subject matter jurisdiction—we will address mootness before the substantive jurisdictional issue. In this type of scenario, if a court did not address mootness first, it would have unfettered discretion to choose to issue what may be an advisory opinion or to dismiss an appeal and avoid addressing the substantive issue based on factual mootness. But we should not "determine abstract principles of law" if the case has become moot. *Id.* at 147-48, 250 S.E.2d at 912.

Here, on 21 February 2023, Respondent filed a motion to dismiss this appeal as moot, contending "[o]n 7 February 2023, D.W. graduated early from the Onslow

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

County Schools, having earned all necessary credits to receive his diploma under North Carolina law and State Board policy." According to the affidavit of the principal of Swansboro High School filed with Respondent's motion, D.W. was certified for "early graduation" based upon his "completion of the requirements for graduation and receipt of a high school diploma." In addition, his transcript "reflects his graduation from Swansboro High School" and the "Onslow County Learning Center program does not appear on his transcript or his diploma." Respondent contends this appeal became moot upon D.W.'s graduation since this court's ruling can no longer provide "any meaningful relief for D.W. in this case[.]" Respondent also argues the public interest exception to mootness should not apply in this case. And if the issue of mootness were clear, we would allow Respondent's motion to dismiss as moot, assuming without deciding the public interest exception would not apply.

But in this case, the facts alleged to support the motion to dismiss as moot are disputed, and this Court cannot resolve factual disputes. *See, e.g., Johnston v. State*, 224 N.C. App. 282, 302, 735 S.E.2d 859, 873 (2012) ("Normally, the appellate courts do not engage in fact finding." (citation and quotation marks omitted)). According to Petitioner:

> D.W. began the 2022-2023 school year at Swansboro High School as a junior with an identified disability requiring an Individualized Education Program (IEP). He still required several classes to complete his junior year, let alone satisfy all requirements for graduation from high school. And yet after a single semester and despite his disability, Respondent now asserts that D.W. has not only

satisfied all graduation requirements, but also has *graduated* from high school. To accomplish this feat, Respondent pushed D.W. through completing multiple semester-long courses out of sequence and via virtual platforms that included no direct instruction, ultimately "graduating" him upon awarding credit for an English course completed in *seven days* without access to critical and required special education services.

Respondent supplied D.W. with deficient educational services while he was suspended and, upon his return to school, Respondent now again tries to deprive D.W. of his constitutional right to "the privilege of education" while avoiding its duty "to guard and maintain that right" by attempting to rush him out of school to avoid this Court's review. N.C. Const. Art. I, § 15. D.W. has not received the education he is owed by the State and has not completed the requirements to graduate from high school. Thus, the issue before this Court is not moot.

(Emphasis in original.)

Petitioner goes on to discuss the details of D.W.'s transcript and notes that he had "only taken and passed English I[;]" he was "enrolled concurrently in English III and in English IV[;]" he was enrolled in English II "in a virtual platform with no instruction[,]" and he "reportedly completed this semester-long course in **just seven days**, after which OCS [Onslow County Schools] 'graduated' him the following day." (Emphasis in original.) Petitioner further alleges his IEP team "just met on 27 January 2023 and determined" he needed "an increase in his special education services," but OCS did not provide the "ninety-five daily minutes of special education services or his weekly thirty-minute counseling sessions required by his IEP[.]" According to the affidavit of D.W.'s mother, she did not "learn that D.W. had been

graduated or that he was no longer eligible to receive his special education services until" she was informed by her attorney on 21 February 2023.[1]  D.W.'s mother also alleges as of 8 March 2023, neither she nor D.W. has received "a final report card or his diploma[,]" although the principal informed her D.W. would have to "'walk the stage' later this year" to get the diploma.

The competing affidavits filed with and in response to the motion to dismiss raise a factual dispute as to whether D.W. had met the requirements to graduate from Swansboro High School.  Notably, since this factual dispute focuses on D.W.'s time at Swansboro High School, it does not relate to D.W.'s course of study or opportunity to progress towards graduation while on disciplinary reassignment at OCLC, which Petitioners here have not challenged.

We assume Respondent would likely challenge Petitioner's contentions as to D.W.'s graduation, but based upon the information before this Court, there is a factual dispute raised by the competing affidavits.  This Court cannot adjudicate factual disputes.  *See, e.g., Johnston*, 224 N.C. App. at 302, 735 S.E.2d at 873 (explaining appellate courts generally "do not engage in fact finding").  According to Petitioners, as of the end of January, D.W.'s mother, Sanders, was not aware of any possibility of D.W. being able to graduate before the usual end of the school year, and she did not learn of his alleged graduation until less than a week before the argument

---

[1] Oral argument of this case was held less than one week later, on 27 February 2023.

of this appeal. D.W.'s mother contends Respondent rushed to push D.W. through a semester-long English class, without any of the special education services required by his IEP, in one week, alone in a room on a computer, allowing Respondent to end its obligation to provide special education services to D.W. and to file its motion to dismiss D.W.'s appeal as moot.

Because there is a factual dispute regarding whether D.W. has actually completed his high school education and graduated, we deny Respondent's motion to dismiss this appeal as moot.

## IV.    Subject Matter Jurisdiction Under Relevant Statutes

Having addressed Respondent's motion to dismiss the appeal as moot, we now turn to the substantive issue of jurisdiction under North Carolina General Statute § 115C-45(c), which depends on the interpretation of Sections 115C-390.7(e) and 115C-390.1(b)(7) in this case. *See* N.C. Gen. Stat. § 115C-45(c) (granting an appeal to superior court of a local board of education review of a final administrative decision on, *inter alia*, "[t]he discipline of a student under G.S. 115C-390.7"); N.C. Gen. Stat. § 115C-390.7(e) (2021) (exempting "[d]isciplinary reassignments" from long-term suspensions in a section specifically on such suspensions); N.C. Gen. Stat. § 115C-390.1(b)(7) (2021) (providing an initial definition for "Long-term suspension"). We first explain the standard of review and then analyze the relevant statutes.

## A. Standard of Review

"Whether a trial court has subject-matter jurisdiction is a question of law,

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted).

**B. Analysis**

We now analyze *de novo* whether the trial court had subject matter jurisdiction in this case. *Id.* We first explain the rules of statutory construction and then apply those rules to the relevant statutes here.

### 1. *Rules of Statutory Construction*

In our analysis, we are guided by several well-established principles of statutory construction. "The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citation omitted). "The best indicia of that intent are the [plain] language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted). "[S]tatutes *in pari materia* must be read in context with each other." *Cedar Creek Enters. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976) (citation omitted).

"When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010) (citation omitted). "Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor v. Robinson*, 131 N.C. App. 337,

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

338, 508 S.E.2d 289, 291 (1998) (internal citations, quotation marks, and ellipses omitted).

Further, "where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (internal quotation marks omitted) (quoting *Mazda Motors v. Sw. Motors,* 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979)).

Our Supreme Court has examined the court's proper application of generally applicable statutes to more specific, special statutes and held:

> Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling; and this is true *a fortiori* when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage.

*McIntyre v. McIntyre,* 341 N.C. 629, 631, 461 S.E.2d 745, 747 (1995) (citations omitted).

### 2. *Statutory Construction Analysis*

Turning to the relevant statutes in this case, North Carolina General Statute

§ 115C-390.1(b)(7) defines long-term suspension as:

> The *exclusion for more than 10 school days* of a student from school attendance for disciplinary purposes from the school to which the student was assigned at the time of the disciplinary action. If the offense leading to the long-term suspension occurs before the final quarter of the school year, the exclusion shall be no longer than the remainder of the school year in which the offense was committed. If the offense leading to the long-term suspension occurs during the final quarter of the school year, the exclusion may include a period up to the remainder of the school year in which the offense was committed and the first semester of the following school year.

N.C. Gen. Stat. § 115C-390.1(b)(7) (emphasis supplied).

North Carolina General Statute § 115C-390.7(e) was enacted in 2011 and specifically exempts disciplinary reassignment from the provisions of long-term suspensions, providing:

> *Disciplinary reassignment of a student to a full-time educational program* that meets the academic requirements of the standard course of study established by the State Board of Education as provided in G.S. 115C-12 and provides the student with the opportunity to make timely progress towards graduation and grade promotion *is not a long-term suspension* requiring the due process procedures described in G.S. 115C-390.8.

N.C. Gen. Stat. § 115C-390.7(e) (emphasis supplied).

Contrary to Petitioners' arguments, the clear intent of the General Assembly is expressed in the plain language of North Carolina General Statute § 115C-390.7(e). The General Assembly reaffirms the doctrine that certain student disciplinary decisions are properly made in the classroom or upon review before the

- 12 -

D.W. v. Onslow Cnty. Bd. of Educ.

*Opinion of the Court*

superintendent and the school board, and not in the courtroom. As the trial court properly found: "[A]lthough reassignment of a student from the attendance of his regular high school to any other school is by definition a 'long-term suspension', it is not a 'long-term suspension' requiring judicial review as provided in the due process procedures described in NCGS 115C-309.8 for other long-term suspensions."

The superior court correctly concluded the plain and more specific language of the 2011 amendment in North Carolina General Statute § 115C-390.7(e) controls under these facts and is properly viewed as a specified exception to the general definition of "long-term suspension" in North Carolina General Statute § 15C-390.1(b)(7). *See Electric Service v. City of Rocky Mount*, 20 N.C. App. 347, 350, 201 S.E.2d 508, 510 (1974) (When a general statute conflicts with a more specific, special statute, the "special statute is viewed as an exception to the provisions of the general statute[.]"), *aff'd* 285 N.C. 135, 203 S.E.2d 838 (1974).

Petitioners do not argue D.W.'s assignment to OCLC fails to meet the requirements from North Carolina General Statute § 115C-12 or that D.W.'s disciplinary reassignment does or did not provide him with the "opportunity to make timely progress towards graduation and grade promotion." N.C. Gen. Stat. § 115C-390.7(e). Petitioners' argument is overruled.

## V. Conclusion

The General Assembly specifically exempted a "disciplinary reassignment" complying with the specific requirements of North Carolina General Statute § 115C-

from being defined and treated as a "long-term suspension." *See* N.C. Gen. Stat. § 115C-390.7(e) and N.C. Gen. Stat. § 115C-390.1(b)(7). The trial court's order dismissing Petitioners' petition for judicial review for lack of subject matter jurisdiction is affirmed. *It is so ordered.*

AFFIRMED.

Judge STADING concurs.

Judge TYSON concurs in result only by separate opinion.

TYSON, Judge, concurring in the result.

I concur in the result to affirm the superior court's order. The trial court properly found: "although reassignment of a student from the attendance of his regular high school to any other school is by definition a 'long-term suspension', it is not a 'long-term suspension' requiring judicial review as provided in the due process procedures described in NCGS 115C-309.8 for other long-term suspensions." The clear intent of the General Assembly, as is expressed in the plain language of N.C. Gen. Stat. § 115C-390.7(e) (2021), reaffirms the doctrine that certain student disciplinary decisions are properly made in the classroom or upon review before the superintendent and the school board, and not in the courtroom. *Id.*

We all agree the superior court correctly concluded Petitioner's disciplinary reassignment is unchallenged on either of the two bases set forth in N.C. Gen. Stat. § 115C-390.7(e), which exempts judicial review of disciplinary reassignments in compliance with the statute. *Id.* The sole proper holding and mandate is to affirm the superior court's order as the law of the case.

"Subject matter jurisdiction is a prerequisite for the exercise of judicial authority over any case or controversy." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 286, 290, 517 S.E.2d 401, 403-04 (1999) (citing *Harris v. Pembaur*, 84 N.C. App. 666, 353 S.E.2d 673 (1987)).

The majority's opinion correctly states: "it is prudent first to consider whether we can address the *substantive legal* jurisdictional issue—subject matter jurisdiction

under Section 115C-45(c)—before the jurisdictional issue based upon facts that develop 'during the course of the proceedings' raised by a motion to dismiss as moot. *In re Peoples*, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978)." "[A] moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim[.]" *Yeager v. Yeager*, 228 N.C. App. 562, 566, 746 S.E.2d 427, 430 (2013)(citing, *inter alia*, *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 585-86, 347 S.E.2d 25, 30 (1986)).

It is a waste of judicial economy to examine unresolved factual disputes, which are wholly unnecessary to resolve the sole issue properly before us: whether the trial court possesses subject matter jurisdiction for judicial review of their petition. Any further discussion of any factual disputes on a motion to dismiss as moot is unnecessary and an advisory *obiter dicta*. Petitioners do not argue D.W.'s disciplinary assignment to OCLC fails to meet the requirements from N.C. Gen. Stat. § 115C-12 or that D.W.'s disciplinary reassignment does or did not provide him with the "opportunity to make timely progress towards graduation and grade promotion[.]" N.C. Gen. Stat. § 115C-390.7(e).

The trial court properly concluded it lacked subject matter jurisdiction for judicial review of a "[d]isciplinary reassignment of a student to a full time educational program." *Id.* As such, it is unnecessary to reach Petitioners or Respondent's arguments on mootness or the factual dispute of D.W.'s purported high school graduation or award of a high school diploma. I vote to affirm the superior court's

2

order.