This is a suit against the defendants on the sheriff's bond of said Woodside, executed in September, 1843, and the breaches assigned are, that he collected and failed to pay over the county taxes, assessed in March, 1844, for the year 1843; and that he failed to collect and pay over the said taxes. It appeared from the record that there were but four magistrates on the bench of the County Court when the taxes aforesaid were imposed, and it was not alleged or pretended that the magistrates of (497) Brunswick had ever been classified, as, by Private Laws of 1831 and 1835, they were directed to be; and it was insisted for the defendants, unless the said magistrates had been so classified no number short of a majority had the power of county taxation. It was admitted that some twelve or fifteen magistrates then resided in the county. The relator offered in evidence a document from the County Court clerk's office, which contained an aggregate valuation of the real estate in Brunswick and the number of black and white polls, which, the clerk then stated, was the data on which he made out the tax list for the year in question, and that the list he gave the sheriff contained the names and the amount collectible out of each taxpayer. It was objected to by the defendants, because the clerk had no right, on such a document, to issue a tax list to the sheriff; that a document, to sustain a tax list, ought to set forth the names of each inhabitant liable to pay taxes and the amount for which he was so liable. It was allowed to be read. D. B. Baker, Esq., the attorney of record for the relator, was introduced as a witness for the purpose of proving that, as county solicitor for Brunswick, he was directed by the County Court to call on the defendants for a settlement, in relation to the county taxes, and also to prove the admissions made by the defendants, or some of them, as to the collection of the said taxes by the said Woodside. His testimony was objected to, on the ground that an attorney of record was not a competent witness for his client. The objection was overruled. There was no evidence of record in the County Court that the relator in this case had ever been appointed county trustee, and, failing to show this, the plaintiff offered a bond he had executed as such, and also offered to prove that he acted as such, and had been treated by the defendants as such, in paying him a portion of the county taxes. This testimony was also objected to, but was received. The tax lists, taken by the magistrates in (498) 1843, were offered in evidence to show that the clerk had authority, or some data to act upon, in making out the tax list delivered to the said Woodside. This testimony was objected to because they had not been recorded as directed by *Page 347 
law, but they were received. Upon the question whether a demand had been made on the defendant Woodside before suit was brought, B. D. Baker, Esq., stated that, as solicitor, he called on the defendants for a settlement about the county taxes before suit brought; that some settlement had taken place between the defendants and the committee on finance; that he had a paper of some kind in his hands when he endeavored to effect a settlement, showing that one had been had with a committee of finance. He also stated that Woodside admitted that he had collected the taxes. And the defendants offered in evidence a receipt signed by the relator, dated June, 1845, as evidence of a payment. The defendants insisted that this testimony, taken altogether, furnished no evidence that a demand had been made. The court thought there was evidence of a demand to be left to the jury. The defendants also insisted that the county trustee was not the proper person to relate, even if it had been made to appear by the record of the County Court that he had been appointed. This suit is for the bridge tax. All the objections raised in this case, by consent of the counsel, were reserved by the court, with liberty to enter a nonsuit. And the court, on consideration, ordered a nonsuit to be entered, and the relator appealed to the Supreme Court.
The action is brought on the official bond of Robert Woodside, who was sheriff of the county of Brunswick, and his sureties. The breach assigned is for (499) collecting and not paying over the county taxes assessed for the year 1843. On the trial below, several objections were urged against the plaintiff's right to sustain his action, and, being all reserved by the court, by the consent of the parties, with liberty to enter a nonsuit, the duty is imposed upon us of considering the whole. We will proceed to do so in the order in which they stand.
The first objection is that no tax was legally imposed by the county of Brunswick for the year 1843, because, by the private acts of 1831 and 1835, the magistrates of that county were directed to divide themselves into classes for the purpose of holding the county courts, which had never been done; therefore, no number less than a majority could lay the tax, and in this case it was admitted that a majority was not present. This objection was substantially answered by this Court in the case of S. v. Woodside,30 N.C. 106. That action was brought on the *Page 348 
official bond of the defendant Robert Woodside and his sureties, to recover the county taxes for the year 1842. The same objection was taken there as here, and being insisted on, as it is now, did not receive that specific answer it ought to have done. It was not, however, overlooked, as is supposed, but was considered to be overruled by the opinion given. It was decided that, under section 6 of the act of 1831, ch. 154, three magistrates were competent to hold the court and lay the county taxes. It is not stated in so many words in the opinion given that this might be legally done, although the magistrates had not classed themselves, but was so substantially, for the opinion states that the magistrates were required to class themselves. Section 6 of the act of 1831 expressly gives to the magistrates, who do attend, the power to do any business that a majority is required to do, which shall be as valid as if done by a majority. We were of opinion then, as we still are, that, although the (500) magistrates were required to class themselves and had neglected so to do, a court composed of any number was competent to lay the taxes. One design of the act was to remedy an evil, felt and complained of by all who were in the habit of attending the county courts. It is an old trite saying that what is everybody's business is nobody's business. By the general law it is made the duty of all magistrates to hold the terms of the County Court, and it is found by experience that much delay occurs, in many instances, in organizing the court and in retaining a sufficient number of justices on the bench for the transaction of business. It was the object of the act of 1831 to remedy this evil, by causing the magistrates to divide their number into classes, containing five members, whose duty it should be to hold three respective terms of the court, and, when so classified, that a majority of the acting class should be competent to do and transact all the business that seven could do. But that they did not intend to confine the power to assess the taxes to the magistrates in their respective classes is manifest from the fact that, if that were true, the words quoted from section 6 would be tautological and unmeaning, as that power was granted to the classified members by the third clauses of the act. It is, however, contended that the act of 1831 is repealed by that of 1835. To a certain extent this is so; wherever it makes provision for the same thing in a different manner it does repeal the act of 1831. Every affirmative statute is a repeal by implication of a prior affirmative statute, so far as it is contrary to it; for the maxim is "leges posteriores priores abrogant."
But the law does not favor these implied revocations, nor is it to be allowed unless the repugnancy be plain, and *Page 349 
where, in the latter act, there is no clause of non obstante, it shall, if possible, have such construction that it shall not operate a repeal. 6 Ba. Ab. Stat., letter D, p. 373; 11 Rep., 63, Foster's case, The statute of 1835 is in pari materia (501) with that of 1831, and its provisions must be pursued when contradictory to the latter. Section 4 is the one relied on as bearing on this case — as repealing section 6 of the act of 1831. The first portion of the section we are considering, down to the first proviso, embraces, with an immaterial variation, section 3 of the act of 1831. The first proviso secures toall the other magistrates of the county the right to hold theterms of the county courts, which was omitted in the preceding act. The second proviso relates to the taking of the sheriff's bonds, giving to the justices, who are absent when the bonds are taken, time, until the succeeding term, to require additional sureties on the bonds, if they deem it necessary. So far, then, as that section makes arrangements different from and inconsistent with the provisions of the act of 1831, it is a repeal of it, but no further, as there is no non obstante clause in it. But in section 6 there is an important provision, entirely omitted in the act of 1835, and the latter contains nothing inconsistent with it; I mean the clause giving to any three magistrates power to do any act which, by law as it was at the time of the enactment of 1831, was required to be done by a majority of the acting justices. The latter provision is not repealed by the act of 1835, and the taxes were in this case assessed by a competent court.
The next objection is to the tax list furnished by the clerk. The case states that it was made out by the clerk from a document in his office, which contained an aggregate valuation of the real estate in Brunswick, and the number of black and white polls, with the names and amount to be collected out of each taxpayer. If the objection were a sound one, it does not lie in the defendants' mouths to make it. The sheriff received it as the tax list and under it did collect the taxes mentioned as due on it. Whether the tax list were a full and legal one or not is not important, for we have decided, in the case of (502)S. v. Woodside, that it is the duty of the sheriff to apply to the office and get a list, but it is not necessary for him to have the list when he collects the tax — he cannot, without a proper tax list, enforce a collection, but may receive without it.
The third objection is to the competency of Mr. Baker, the plaintiff's attorney, to give evidence for him in the case. it appears from the case ofBundy v. Bullett, 16 Mus. and Willy, 645, N., that such a rule has been adopted by the English courts. *Page 350 
It is to be remembered that in England there is a material difference between the office of counsellor and that of an attorney, and that in the case referred to it was an attorney whose testimony was offered in evidence. In this State there is no such distinction known — every attorney with us is also a counsellor. Be this as it may, it has been the uniform practice in our courts to receive such testimony. It is a practice not to be encouraged, and in most cases has, we believe, been accompanied by a surrender, on the part of the attorney, of his brief in the case.
The fourth objection is that there was no record showing that the relator ever had been duly appointed county trustee. From the state of the pleadings this objection is not open to the plaintiff. He has accepted a declaration from the plaintiff, and has not by any plea denied that the relator was the county trustee. His pleas are, non est factum, payment, and conditions performed. It would be a complete surprise on a plaintiff to suffer this defense to be sprung upon him under either of these pleas.
The fifth exception is answered in replying to the third.
The sixth objection is that the plaintiff had not shown any demand. It has been decided in this Court, in S. v. McIntosh,ante, 307, that where a public officer collects money due to the State no demand is necessary. It is the duty of the officer to pay it into the proper office, when collected, and it is a (503) breach of his official duty not to do so. Mr. Baker proved that the sheriff, Woodside, admitted to him he had collected the taxes for which this action is brought.
It was finally objected that the county trustee was not the proper person to relate in this case. S. v. McIntosh is relied upon to show that by the general law the county trustee cannot be the relator to recover the county revenue. That case is no authority for the position assumed. The portion of the opinion relied on is the answer to the defendant's first exception. The question was whether, in that action, the county of Moore or the chairman of the County Court was the proper relator. This depended upon the true construction of a private act passed in 1835 for the benefit of the county of Moore. In making this construction the court adverted to the peculiar phraseology of the private act, and also to that of section 3 of the act of 1777, directing "the county trustee to sue for, recover and collect" from all persons all money due his county. In commenting on that section the Court say: "But no direction is given in whose name the suit shall be brought." In the succeeding sentence the meaning of the Court is made manifest. *Page 351 
It is in these words: "At the time, then, the private act of 1835 was passed, no law existed directing the trustee, in so many words, to sue in his own name." The case is no authority for the objection assumed here.
The judgment below must be reversed and judgment given for the amount rendered by the jury in their verdict.