TERRY W. BANKS, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF TERECIA L. BANKS; DEBORAH P. BOWMAN, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF K. DAWN BOWMAN; SUSAN G. CAMERON, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF CARRIE D. CAMERON; MICHAEL W. MOORE, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF MATTHEW W. MOORE; PAUL J. PLESS, JR., INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF JOSEPH H. PLESS; BENNIE LEE TATE, INDIVIDUALLY AND AS GUARDIAN *AD LITEM* OF CHARMIE A. TATE; AND THE BUNCOMBE COUNTY BOARD OF EDUCATION, A BODY CORPORATE, PLAINTIFFS-APPELLANTS v. THE COUNTY OF BUNCOMBE, A BODY POLITIC AND CORPORATE OF THE STATE OF NORTH CAROLINA; AND THE BOARD OF COMMISSIONERS FOR THE COUNTY OF BUNCOMBE, GOVERNING BOARD OF THE COUNTY OF BUNCOMBE, DEFENDANTS-APPELLEES AND ASHEVILLE CITY BOARD OF EDUCATION, A BODY CORPORATE, INTERVENOR DEFENDANT-APPELLEE

No. COA97-180

(Filed 6 January 1998)

**1. Schools § 70 (NCI4th); Taxation § 145 (NCI4th)— residual sales and use tax—distribution to city and county schools—method of distribution**

The trial court did not err in an action arising from a dispute over the distribution of residual sales tax funds to county and city

BANKS v. COUNTY OF BUNCOMBE

[128 N.C. App. 214 (1998)]

school systems by the Buncombe County Board of Commissioners by concluding that there is no conflict between N.C.G.S. § 105-472(b)(2), which involves the ad valorem method of distribution, and N.C.G.S. § 115C-430, which involves apportionment by membership of each unit. The statutes involve different subject matters; under the express mandate of N.C.G.S. § 105-472(b)(2), the County serves merely as a conduit or agent of the taxing district in passing through funds over which the County has no claim or control, while N.C.G.S. § 115C-430 deals with discretionary appropriations by the County to each school district's current expense fund. The legislature did not intend for N.C.G.S. § 115C-430 to supersede N.C.G.S. § 105-472(b)(2) because distribution of the residual sales taxes under N.C.G.S. § 105-472(b)(2) is dependent upon the levy of ad valorem taxes within the taxing district.

**2. Schools § 70 (NCI4th); Taxation § 145 (NCI4th)— residual sales and use tax—distribution to city and county schools—statutes not in conflict**

The trial court did not err in an action arising from a dispute over the distribution of residual sales tax funds between county and city school systems by the Buncombe County Board of Commissioners by concluding that N.C.G.S. § 105-472(b)(2) was not repealed by N.C.G.S. § 115C-424, which states that all provisions of general laws and local acts in conflict with the provisions of that Article are repealed. N.C.G.S. § 105-472(b)(2) and N.C.G.S. § 115C-430 are not in conflict.

**3. Schools § 70 (NCI4th); Taxation § 145 (NCI4th)— residual sales and use tax—distribution to city and county schools—specific statute controls general**

The trial court did not err in an action arising from a dispute over the distribution of residual sales tax funds between county and city school systems by the Buncombe County Board of Commissioners by concluding that N.C.G.S. § 115C-430 did not govern distributions of the residual sales taxes to the current expense funds of each district. N.C.G.S. § 115C-430 is a general statute dealing with the distribution of county appropriations to multiple school districts within the County, while N.C.G.S. § 105-472(b)(2) is a specific statute dealing with the distribution of sales tax proceeds to taxing districts within the County. The specific statute controls.

**4. Constitutional Law § 94 (NCI4th)— residual sales tax— method of distribution to city and county schools—equal protection not violated**

The trial court did not err in an action arising from a dispute over the distribution of residual sales tax funds between county and city school systems by the Buncombe County Board of Commissioners by concluding that the ad valorem method of distributing residual sales taxes under N.C.G.S. § 105-472(b)(2) was not unconstitutional under the equal protection clause of Article I, Section 29 of the North Carolina Constitution. The North Carolina Supreme Court has recently addressed a similar issue in *Leandro v. State of North Carolina*, 346 N.C. 336, and concluded that the equal opportunities clause does not require substantially equal funding or educational advantages in all school districts and that the equal protection clause was not violated since the equal opportunities clause was not violated. The Court of Appeals has also determined that students in public schools do not have a fundamental right to uniform educational opportunities.

**5. Constitutional Law § 100 (NCI4th)— residual sales tax— method of distribution to city and county schools—due process not violated**

The trial court did not err in an action arising from a dispute over the distribution of residual sales tax funds between county and city school systems by the Buncombe County Board of Commissioners by concluding that plaintiffs were not deprived of due process under the North Carolina Constitution where plaintiffs were not deprived of equal access to the sound basic education they were guaranteed by the North Carolina Constitution.

Judge WYNN dissenting.

Appeal by plaintiffs-appellants from judgment entered 3 September 1996 by Judge Ronald E. Bogle in Buncombe County Superior Court. Heard in the Court of Appeals 7 October 1997.

*Roberts & Stevens, P.A., by Walter L. Currie and Cynthia S. Lopez, for plaintiffs-appellants.*

*Joseph A. Connolly, Buncombe County Attorney, for defendants-appellees Buncombe County and the Board of Commissioners for Buncombe County.*

*Schwartz & Shaw, P.L.L.C., by Richard A. Schwartz and Brian C. Shaw, for intervenor defendant-appellee Asheville City Board of Education.*

WALKER, Judge.

Buncombe County (the County) contains two separate school districts, the Buncombe County Schools (County Schools) and the Asheville City Schools (City Schools). The average daily membership (ADM) for the County Schools for fiscal years 1993-94 (FY 1993-94) and 1994-95 (FY 1994-95) was eighty-four percent (84%) of the total student population of the County, while the ADM for the City Schools during the same time period was sixteen percent (16%).

On 10 March 1995, plaintiffs filed suit against the County and the County Board of Commissioners challenging the County's method of distributing funds to the two school districts. In their complaint, plaintiffs made the following allegations and requests for relief: (1) that the County is bound to follow N.C. Gen. Stat. § 115C-430 in apportioning the residual local sales and use taxes between the two schools, and that N.C. Gen. Stat. § 105-472 was repealed by N.C. Gen. Stat. § 115C-424; (2) that N.C. Gen. Stat. § 115C-430 and N.C. Gen. Stat. § 105-472 are in conflict, and the County is bound to follow N.C. Gen. Stat. § 115C-430; (3) that the County is a taxing district under N.C. Gen. Stat. § 105-472(b)(2), and is therefore entitled to a share of the residual sales taxes; (4) that plaintiffs' constitutional rights to equal protection of the laws have been violated "by virtue of this arbitrary, capricious and irrational system of funding public education in Buncombe County;" (5) that plaintiffs have been deprived of liberty and property without due process of the law by virtue of the North Carolina Compulsory Attendance Law and the County's distribution of the residual sales taxes; and (6) that plaintiffs are entitled to a preliminary injunction prohibiting the County from distributing any residual sales taxes after 1 July 1995 until a final judgment is reached in this matter.

On 10 June 1995, the trial court allowed the City Schools to intervene in the action pursuant to Rule 24 of the North Carolina Rules of Civil Procedure. All the parties filed stipulations of facts and issues on 10 June 1996, in which the third claim for relief and the request for a preliminary injunction were withdrawn. Following a trial, judgment was entered for the defendants and intervenor-defendant on all issues on 3 September 1996.

The trial court made the following findings and conclusions in support of its judgment. The County Schools and City Schools receive funding from a variety of sources, including local sales taxes, ad valorem taxes, and Federal and State grants. *See* N.C. Gen. Stat. § 115C-426 (1994). Since figures for fiscal year 1995-96 (FY 1995-96) were incomplete, the trial of this matter focused on FY 1993-94 and FY 1994-95. For these two fiscal years (FYs 1993-95), the County appropriated the following total amounts from its General Fund to the local current expense fund of each school district on an ADM basis: $8,400,696.00 to the City Schools and $43,328,225.00 to the County Schools.

In addition, the County is authorized to levy additional local government sales and use taxes (sales taxes) pursuant to Articles 39 (1 cent tax), 40 (½ cent tax) and 42 (½ cent tax) of Chapter 105 of the N.C. General Statutes. These sales taxes are collected by the N.C. Department of Revenue (Department of Revenue) and redistributed to the County pursuant to statute.

By special local legislation in Chapters 134 and 534 of the 1983 Session Laws, fifty percent (50%) of the Article 39 sales taxes are paid into the County's School Capital Reserve Fund (Capital Reserve Fund) for the purposes of funding school capital projects. The County then distributes the Capital Reserve Fund to the two school districts on an ADM basis. For FYs 1993-95, the County distributed $2,356,603.00 to the City Schools and $12,151,749.00 to the County Schools from this fund.

Further, under N.C. Gen. Stat. § 105-487 and N.C. Gen. Stat. § 105-502, respectively, thirty percent (30%) of the Article 40 sales taxes and sixty percent (60%) of the Article 42 sales taxes are restricted for school capital outlay purposes. At all relevant times, the County has appropriated these restricted funds on an ADM basis. For FYs 1993-95, the County distributed restricted funds totaling $1,717,550.00 to the City Schools and $8,856,879.00 to the County Schools.

In addition, the citizens of the City Schools district have approved a special ad valorem tax (supplemental tax) in their district to supplement the funds from the State and the County and "thereby operate schools of a higher standard . . . ." *See* N.C. Gen. Stat. § 115C-501 (1994). The citizens in the Enka High School attendance area of the County Schools district also approved a supplemental tax; however, this tax was repealed in 1994. For FYs 1993-95, the amount of supple-

mental taxes levied on behalf of the City Schools was $6,987,923.00, while the amount levied on behalf of the County Schools was $772,428.00 (no tax was levied on behalf of the County Schools in FY 1994-95 since the supplemental tax was repealed in 1994).

On a quarterly basis, the Department of Revenue allocates to each taxing county the net proceeds of the sales taxes collected in that county. *See* N.C. Gen. Stat. § 105-472(a) (1995). The net proceeds received by each county from the Department of Revenue, less the restricted portions of the Articles 39, 40 and 42 sales taxes, are referred to as the residual local sales and use taxes (residual sales taxes). It is a portion of these residual sales taxes that are at issue in this case.

Pursuant to N.C. Gen. Stat. § 105-472(b), a county must choose one of two methods for distributing the residual sales taxes—the per capita method or the ad valorem method. Under the per capita method, the residual sales taxes are distributed to each taxing district within the county according to the percentage of the county's population which the taxing district represents. Under the ad valorem method, the residual sales taxes are distributed to each taxing district within the county according to the percentage that the ad valorem taxes levied in the taxing district bears to the total county ad valorem tax levy.

As the trial court correctly noted, if the County had chosen to utilize the per capita method of distribution, they would not have been required to distribute any of the residual sales taxes to the two school districts. However, at all relevant times, the County has elected to utilize the ad valorem method of distributing the residual sales taxes. As a result, for FY 1993-94, the County distributed a total of $1,427,393.00 of the residual sales taxes to the City Schools and a total of $326,773.00 to the County Schools. And, for FY 1994-95, the County distributed a total of $1,400,128.00 of the residual sales taxes to the City Schools and a total of $332,465.00 to the County Schools.

However, since the supplemental tax in the Enka High School attendance area of the County Schools district was repealed in 1994, the County Schools no longer receive a portion of the residual sales taxes under the ad valorem distribution method. Plaintiffs contend these residual sales tax proceeds should be distributed to the school districts on an ADM basis in accordance with N.C. Gen. Stat. § 115C-430. The parties represent that if the residual sales taxes were distributed to the two schools systems on an ADM basis for FY 1995-

96, the County Schools would have received additional funds of approximately $1,200,000.00, their 84% proportionate share of the residual sales taxes.

Plaintiffs' first three assignments of error deal with matters of statutory construction. At the outset, we note that it is well established in this State that legislative intent controls the interpretation of a statute, and when two statutes concern the same subject matter "their provisions are to be reconciled if this can be done by fair and reasonable intendment . . . ." *Highway Commission v. Hemphill*, 269 N.C. 535, 538-539, 153 S.E.2d 22, 26 (1967); *see also Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969) ("[W]hen statutes 'deal with the same subject matter, they must be construed in *pari materia* and harmonized to give effect to each.' " (*quoting Gravel Co. v. Taylor*, 269 N.C. 617, 620, 153 S.E.2d 19, 21 (1967)). Further, "[i]t is always presumed that the legislature acted with care and deliberation and with full knowledge of prior and existing law." *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970). Finally, our Supreme Court has stated that:

> Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling; and this is true *a fortiori* when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage.

*Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-629, 151 S.E.2d 582, 586 (1966).

[1] Plaintiffs first contend that the trial court erred in concluding that N.C. Gen. Stat. § 105-472(b)(2) was not in conflict with N.C. Gen. Stat. § 115C-430. Under the terms of N.C. Gen. Stat. § 105-472(b)(2), which deals with the ad valorem method of distribution, there is a two-tier distribution process. In the first tier, the Department of Revenue allocates the residual sales taxes between the County and its municipalities in proportion to the amounts of ad valorem taxes levied by each during the previous fiscal year, which includes the amounts levied by

the County on behalf of each of the taxing districts. The second tier involves the County distributing the taxes it receives to the various taxing districts, in proportion to the amount of ad valorem taxes levied on their behalf during the previous fiscal year.

On the other hand, N.C. Gen. Stat. § 115C-430 states, in relevant part:

If there is more than one local school administrative unit in a county, all appropriations by the county to the local current expense funds of the units, except appropriations funded by supplemental taxes levied less than countywide . . ., must be apportioned according to the membership of each unit.

N.C. Gen. Stat. § 115C-430 (1994).

As the trial court found, the two statutes involve different subject matters. The funds which are dealt with in N.C. Gen. Stat. § 105-472(b)(2) concern tax funds which are distributed to the individual taxing districts by the County based on the proportion of ad valorem taxes levied on each taxing district's behalf during the previous fiscal year. Under the express language of the statute, these distributions are mandatory. The County serves merely as a conduit or agent of the taxing district in "passing through" funds which belong to those taxing districts and over which the County has no claim or control. In contrast, N.C. Gen. Stat. § 115C-430 deals with discretionary appropriations by the County to each school district's current expense fund.

Since distribution of the residual sales taxes under N.C. Gen. Stat. § 105-472(b)(2) is dependent upon the levy of ad valorem taxes within a taxing district, it does not appear that it was the intent of the legislature for N.C. Gen. Stat. § 115C-430 to supersede N.C. Gen. Stat. § 105-472(b)(2). Therefore, the trial court properly concluded that the two statutes were not in conflict, and plaintiffs' first assignment of error is overruled.

[2]  Plaintiffs' next contention is that the trial court erred by concluding that N.C. Gen. Stat. § 115C-424 (the repealer statute) did not repeal N.C. Gen. Stat. § 105-472(b)(2). The repealer statute states, in relevant part:

It is the intent of the General Assembly by enactment of this Article to prescribe for the public schools a uniform system of

budgeting and fiscal control. To this end, all provisions of general laws and local acts in effect as of July 1, 1976, *and in conflict with the provisions of this Article* are repealed. . . .

N.C. Gen. Stat. § 115C-424 (1994) (emphasis added). The repealer statute specifically applies only to prior statutes that are in conflict with Article 31 of Chapter 115C of the N.C. General Statutes—the School Budget and Fiscal Control Act. Since N.C. Gen. Stat. § 105-472(b)(2) and N.C. Gen. Stat. § 115C-430 are not in conflict, the trial court did not err in concluding that the repealer statute did not apply in this situation, and this assignment of error is overruled.

**[3]** Plaintiffs next contend that the trial court erred in concluding that N.C. Gen. Stat. § 115C-430 did not govern distributions of the residual sales taxes to the current expense funds of each school district. As previously stated, if there are two statutes, and one is general and one specific, then the specific statute applies unless a contrary intention exists. *Food Stores v. Board of Alcoholic Control*, 268 N.C. at 628-629, 151 S.E.2d at 586.

N.C. Gen. Stat. § 115C-430 is a general statute dealing with the distribution of county appropriations to multiple school districts within the County. In contrast, N.C. Gen. Stat. § 105-472(b)(2) is a specific statute dealing with the distribution of sales tax proceeds to taxing districts within the County. Therefore, since the specific statute controls, and there appears to be no contrary intention on the part of the legislature, the trial court properly concluded that N.C. Gen. Stat. § 105-472(b)(2) governed distribution of the residual sales taxes, and this assignment of error is overruled.

**[4]** Plaintiffs' final two assignments of error deal with constitutional issues. Plaintiffs first contend the trial court incorrectly concluded that the ad valorem method of distributing the residual sales taxes under N.C. Gen. Stat. § 105-472(b)(2) was not unconstitutional under the equal protection clause of Article I, Section 19 of the North Carolina Constitution. They argue that the County's failure to distribute the residual sales taxes on an ADM basis results in students in one part of the County having superior resources over students in another part of the County.

Our Supreme Court has recently addressed a similar issue in *Leandro v. State of North Carolina*, 346 N.C. 336, 488 S.E.2d 249 (1997), in which it held:

Although we have concluded that the North Carolina Constitution requires that access to a sound basic education be provided

equally in every school district, we are convinced that the equal opportunities clause of Article IX, Section 2(1) does not require substantially equal funding or educational advantages in all school districts. We have considered the language and history underlying this and other constitutional provisions concerned with education as well as former opinions by this Court. As a result, we conclude that provisions of the current state system for funding schools which require or allow counties to help finance their school systems and result in unequal funding among the school districts of the state do not violate constitutional principles.

*Id.* at 349, 488 S.E.2d at 256. The Court then concluded that since the equal opportunities clause under Article IX, Section 2(1) of the North Carolina Constitution was not violated, the equal protection clause under Article I, Section 19 likewise was not violated. *Id.* at 352, 488 S.E.2d at 258.

Further, this Court has determined that while students in our public schools have a fundamental right of equal access to education, they do not have a fundamental right to uniform educational opportunities. *See Britt v. N.C. State Board of Education,* 86 N.C. App. 282, 357 S.E.2d 432, *disc. review denied and appeal dismissed,* 320 N.C. 790, 361 S.E.2d 71 (1987). In *Britt,* our Court stated that:

The governing boards of units of local government having financial responsibility for public education are expressly authorized to "use local revenues to add to or supplement any public school or post-secondary school program." N.C. Const., Article IX, § 2(2). Clearly then, a county with greater financial resources will be able to supplement its programs to a greater degree than less wealthy counties, resulting in enhanced educational opportunity for its students. . . . [This] provision[] obviously prelude[s] the possibility that exactly equal educational opportunities can be offered throughout the State.

*Id.* at 288, 357 S.E.2d at 435-436. Again, the *Leandro* court agreed, stating that:

[A]s the North Carolina Constitution so clearly creates the likelihood of unequal funding among the districts as a result of local supplements, we see no reason to suspect that the framers intended that substantially equal education opportunities beyond the sound basic education mandated by the Constitution must be available in all districts.

*Leandro v. State of North Carolina*, 346 N.C. at 350, 488 S.E.2d at 256.

After an extensive review of the record and applying the guiding principles set forth by our courts, we find that the trial court did not err in concluding that the evidence presented in this case fails to establish that the students in the County Schools have been denied equal access to a sound basic education in violation of equal protection principles, and we therefore overrule this assignment of error.

**[5]** Lastly, plaintiffs contend that since they have been denied equal access to education due to the County's failure to distribute the residual sales taxes on an ADM basis, they have also been denied due process of law under Article I, Section 19 of the North Carolina Constitution, which is synonymous with the requirement of due process under the Fourteenth Amendment to the United States Constitution. *In re Petition of Kermit Smith*, 82 N.C. App. 107, 109, 345 S.E.2d 423, 425 (1986).

Since the evidence presented in this case fails to establish that plaintiffs have been deprived of equal access to the sound basic education which they are guaranteed by the N.C. Constitution, the trial court did not err in concluding that the evidence also fails to establish that plaintiffs have been deprived of due process under Article I, Section 19 of the N.C. Constitution, and therefore this assignment of error is overruled.

In conclusion, we find that the trial court did not err in concluding that plaintiffs have failed to establish that they are entitled to the relief requested in their complaint, and we therefore affirm the judgment entered in favor of defendants and intervenor-defendant.

Affirmed.

Judge WYNN dissents.

Judge SMITH concurs.

Judge WYNN dissenting:

I agree with the Buncombe County Board of Education and the plaintiffs in this case that the residual sales tax should be distributed on a more equitable basis such as the ADM method under § 115C-430 rather under the ad valorem method under § 105-472.

It appears to me that § 105-472 contemplated the imposition of a county-wide ad valorem tax, and therefore a distribution of the residual sales tax under that method would allow for a proportionate division of the residual sales tax to everyone. However, Buncombe County's school district has the nearly unique feature of having two school districts in which one self-imposes a supplemental tax and the other chooses not to. Thus, in this case, one district receives all of the residual tax that is generated from sources other than the self-imposed tax to the complete exclusion of the other. That's not fair!

First, I would find that § 105-472 is in conflict with § 115C-430 and is therefore controlled by the repealer statute of § 115C-424. The repealer statute specifically repeals statutes like § 105-472 that conflict with provisions under Article 31 of Chapter 115C.

Second, I would find that this case is not controlled by our Supreme Court's recent decision in *Leandro v. State*, 346 N.C. 336, 488 S.E.2d 249 (1997) because in this case, the city schools receive not only the self-imposed supplemental tax but also, to the exclusion of the county schools, the proceeds from a bonus tax. As a result of the County's failure to distribute that bonus tax—the residual sales tax—on an ADM basis, the students in one part of Buncombe County have superior resources over students in another part of the county. Thus, unlike *Leandro* which addressed only supplemental funding, the additional advantage of this bonus tax in this case is evidence that the students in the county schools are being denied equal access to a sound basic education. I must therefore, dissent.