TRACEY TAYLOR, PLAINTIFF v. EBONY NAYTASHA ROBINSON AND
JULIO ESQUILINA, DEFENDANTS

No. COA97-1407

(Filed 17 November 1998)

**Juveniles— undisciplined fifteen-year-old—commitment for contempt—Juvenile Code—exclusive authority**

The trial court erred by committing a fifteen-year-old defendant to the Division of Youth Services for contempt; interpreting the general enforcement provision of the Parental Control Act in light of the more recent and specific Juvenile Code, which has exclusive authority over a discrete age group of possible defendants, the court should have followed the statutory process under the Juvenile Code rather than immediately committing a fifteen-year-old for undisciplined behavior.

Judge LEWIS dissenting.

On writ of certiorari to review order entered 5 June 1997 by Judge Paul A. Hardison in Onslow County District Court. Heard in Court of Appeals 26 August 1998.

*No brief filed for plaintiff.*

*No brief filed for defendants.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General John R. Corne, for Division of Youth Services, Department of Health and Human Services.*

MARTIN, John C., Judge.

On 21 May 1997, plaintiff filed a complaint pursuant to G.S. § 110-44.1 *et seq.*, the "Parental Control Act",[1] alleging that her daughter Ebony Robinson, then fifteen years of age, had removed herself from plaintiff's home and had refused to submit to parental control. The court entered an amended temporary order on 22 May 1997, requiring that Ebony reside with her mother, attend school, submit to the supervision and control of her mother, obey a 6:00 p.m. curfew, and avoid contact with Julio Esquilina.

---

1. Repealed effective 1 July 1999, 1998 N.C. Sess. Laws 1998-202.

On 5 June 1997, the court found that Ebony Robinson had failed to follow the "rules of her mother's home," continued to "talk back to her mother and step-father," and damaged "personal property of her mother's and step-father's." The trial court found Ebony's conduct to be a "willful violation of the prior Court Order," adjudicated her to be in contempt of court, and ordered her commitment to the New Hanover Regional Detention Center for thirty days, twenty days of which were suspended. Contending the district court is without statutory authority and/or jurisdiction to commit a child under the age of sixteen to the custody of the Division of Youth Services of the Department of Health and Human Services pursuant to G.S. § 110-44.4, the DYS/DHSS petitioned this Court for a writ of certiorari.

We note at the outset that the power of the courts to punish minors for contempt is not at issue in this appeal. Specifically, the narrow question presented is whether the district court, acting pursuant to G.S. § 110-44.4, may commit a minor under the age of sixteen years into the custody of DYS/DHSS as punishment for criminal contempt for the minor's violation of the court's order by engaging in what essentially is undisciplined and non-criminal behavior.[2] Resolution of this question requires that we examine the relationship between the Parental Control Act, G.S. § 110-44.1 through 110-44.4, and the Juvenile Code, G.S. § 7A-516 through 7A-732.

The intent of the legislature controls statutory interpretation. *State v. Perry*, 305 N.C. 225, 287 S.E.2d 810 (1982).

> Interpretations that would create a conflict between two or more statutes are to be avoided, and "statutes should be reconciled with each other . . ." whenever possible. *Hunt v. Reinsurance Facility*, 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981). When a more generally applicable statute conflicts with a more specific, special statute, the "special statute is viewed as an exception to the provisions of the general statute . . . ." *Domestic Electric Service, Inc. v. City of Rocky Mount*, 20 N.C. App. 347, 350, 201 S.E.2d 508, 510, *aff'd* 285 N.C. 135, 203 S.E.2d 838 (1974).

*Meyer v. Walls*, 122 N.C. App. 507, 512, 471 S.E.2d 422, 426 (1996) *aff'd in part, rev'd in part*, 347 N.C. 97, 489 S.E.2d 880 (1997). This principle has been more fully explained by the North Carolina Supreme Court:

_____

2. G.S. § 7B-205, effective 1 July 1999, specifically permits undisciplined juveniles to be confined in an approved detention facility upon being held in contempt for wilful failure to comply with an order of the court. 1998 N.C. Sess. Laws 1998-202 § 6.

"Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling; and this is true a fortiori when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage."

*McIntyre v. McIntyre*, 341 N.C. 629, 631, 461 S.E.2d 745, 747 (1995) (quoting *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 628-629, 151 S.E.2d 582, 586 (1966)); *Banks v. County of Buncombe*, 128 N.C. App. 214, 494 S.E.2d 791, *aff'd*, 348 N.C. 687, 500 S.E.2d 666 (1998); *see also Stewart v. Johnston County Board of Ed.*, 129 N.C. App. 108, 498 S.E.2d 382 (1998).

In this case the Parental Control Act, a general statute with authority over defendants of all ages, conflicts with the Juvenile Code, a specialized statute with exclusive jurisdictional age requirements. We believe the legislature intended the Juvenile Code should govern the commitment of minors, under the age of sixteen, into state custody.

The Parental Control Act, G.S. § 110-44.1 through 110-44.4, gives the district court the authority to "issue an order directing the child personally to appear before the court at a specified time to be heard in answer to the allegations of the plaintiff and to comply with further orders of the court." N.C. Gen. Stat. § 110-44.4 (1997). The authority of the court to require children to appear and answer the allegations is undisputed. The Act states that the district court "shall also have authority to order that any person named defendant in the order or judgment shall not harbor, keep, or allow the defendant child to remain on said person's premises or in said person's home." *Id.* Likewise, the district court's authority over those harboring children against the will of parents is not in dispute.

The orders entered under the Parental Control Act are "punishable as for contempt." *Id.* ("Failure of any defendant to comply with the terms of said order or judgment shall be punishable as for contempt."). The Parental Control Act orders apply to defendants of all

ages, and these orders may be enforced against minors and those harboring minors. The question is whether enforcement of such orders against undisciplined minors under the age of sixteen also necessarily entails the Juvenile Code. We hold that it does.

In the present case the trial court, recognizing that it violates federal and state public policy to hold a minor in contempt and place them in adult custody, summarily committed the juvenile to DYS/DHSS, rather than follow the specific provisions of the Juvenile Code which apply to undisciplined juveniles of defendant's age. We believe it was error to bypass the procedures specified by the Code.

In 1979, the General Assembly enacted comprehensive reforms in this State's juvenile justice laws which gave, without exception, exclusive and original jurisdiction to the district court, under the Juvenile Code, in matters of undisciplined and delinquent juvenile behavior. N.C. Gen. Stat. § 7A-523 (1995). These comprehensive reforms, recommended by the legislatively created Juvenile Code Revision Committee, see N.C. Gen. Stat. § 143B-480(c)(5)-(6) (1978), superseded and altered the jurisdiction of other courts in juvenile matters under previous statutes, such as the Parental Control Act, which was enacted in 1969. N.C. Gen. Stat. § 7A-516 to -732 (1979); see also Mason P. Thomas, Juvenile Justice in Transition—A New Juvenile Code for North Carolina, 16 Wake Forest L. Rev. 1 (1980).

Among the many reforms to the juvenile justice system included a change in the jurisdictional scope of the Juvenile Code. Prior to 1979, the jurisdictional scope of the Juvenile Code was defined by G.S. § 7A-279 (1977), which stated: "The court shall have exclusive, original jurisdiction over any case involving a child who resides in or is found in the district and who is alleged to be delinquent, undisciplined, dependent, or neglected . . . except as otherwise provided." N.C. Gen. Stat. § 7A-279 (1977) (emphasis added). The "otherwise provided" language permitted courts other than the juvenile court to exercise jurisdiction over juveniles in other matters such as habeas corpus petitions by parents for custody. In re Greer, 26 N.C. App. 106, 112, 215 S.E.2d 404, 408, cert. denied, 287 N.C. 664, 216 S.E.2d 910 (1975) (finding that despite the "exclusive and original" jurisdiction language, "[n]evertheless, it has been held that the jurisdiction statute applicable to juveniles places no limitation upon the jurisdiction previously conferred by statute upon the Superior Court to issue writs of habeas corpus and to determine the custody of children of separated parents").

The Juvenile Code Revision Committee proposed, and the General Assembly accepted, the removal of the "except as otherwise provided" clause of the jurisdictional definition of the Juvenile Code. The new jurisdictional statute, G.S. § 7A-523, "clarifies when jurisdiction of the court attaches and makes it clear that there is no minimum age for jurisdiction. Jurisdiction is determined based on the age of the juvenile at the time of the offense." Juvenile Code Revision Committee, *The Final Report of the Juvenile Code Revision Committee*, 111-12 cmt. C (1979). After 1979, the District Court, under the Juvenile Code, "has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent, undisciplined, abused, neglected, or dependent" without exception. N.C. Gen. Stat. § 7A-523 (1995). By definition, the Juvenile Code applies only to undisciplined and delinquent minors who have not reached the age of sixteen. N.C. Gen. Stat. § 7A-517(20) (1995). Thus, after the 1979 revisions, the Juvenile Code is the exclusive provision governing the commitment of allegedly undisciplined minors under the age of sixteen. N.C. Gen. Stat. § 7A-517(12),(20),(28) & 7A-523 (1995).

An undisciplined juvenile, under the statute, is one who "is regularly disobedient to his parent, guardian, or custodian and beyond their disciplinary control; or who is regularly found in places where it is unlawful for a juvenile to be; or who has run away from home." N.C. Gen. Stat. § 7A-517(28) (1995); *In re Walker*, 14 N.C. App. 356, 188 S.E.2d 731 (1972). The complaint filed in this action alleged, and the court found in its contempt order, behavior by Ebony Robinson which essentially was undisciplined behavior, as defined by the statute. Ebony was fifteen years of age when the complaint was filed; therefore, the commitment procedures under the Juvenile Code provided the exclusive enforcement mechanism for the Parental Control Act order.

Defining the jurisdictional scope of the Juvenile Code as exclusive in the commitment of delinquent and undisciplined juvenile behavior assures that the purposes of the revised Juvenile Code are better served by preventing circumvention of juvenile procedures carefully crafted to "provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen. Stat. § 7A-516(5) (1995). Allowing courts to summarily place juveniles in State custody, outside of the intended juvenile process, undermines the statutory diversion of juvenile offenders to intake services

created to help juveniles "remain in their homes" and receive treatment "through community-based services." N.C. Gen. Stat. § 7A-516(1) (1995).

Rather than immediately committing a fifteen year old for undisciplined behavior, the court should have followed the statutory process for handling complaints of undisciplined behavior, under the Juvenile Code. This process would include the: screening of complaints by a court counselor, G.S. § 7A-530 (1995), preliminary inquiry regarding jurisdiction, divertability, and legal sufficiency, G.S. § 7A-531 (1995), evaluation by intake counselor considering diversion to a community resource, G.S. § 7A-532, 533, 289.6(1) (1995), referral, follow-up and request for review by prosecutor, G.S. § 7A-534, 535, filing of petition, G.S. § 7A-560, 561, 563 (1995) and ultimate adjudication and disposition by the juvenile court, G.S. § 7A-629, 640 (1995).

Several dispositional alternatives for undisciplined juveniles are available under G.S. § 7A-647, 7A-648, (home supervision under the Department of Social Services, medical or psychiatric evaluation, protective supervision of the court counselor); however, commitment to the Division of Youth Services is not a dispositional alternative for undisciplined juveniles. N.C. Gen. Stat. § 7A-648 (1995); *In re Kenyon N.*, 110 N.C. App. 294, 298, 429 S.E.2d 447, 449 (1993) ("Without a valid adjudication of delinquency, the trial court in Buncombe County was without jurisdiction to commit the juvenile to the Division of Youth Services."); *In re Bullabough*, 89 N.C. App. 171, 187, 365 S.E.2d 642, 651 (1988); *In re Hughes*, 50 N.C. App. 258, 261, 273 S.E.2d 324, 326 (1981) ("If commitment to the Division of Youth Services had been grounded on the commission of this offense alone, we would have been compelled to reverse the juvenile court on the grounds that such commitment is not a statutorily permissible dispositional alternative for 'undisciplined' behavior."). "An undisciplined child generally may not be placed in secure custody in a pre-hearing detention facility or in any cell of a local jail; a status offender should be placed in a non-secure custody resource like a foster home." Mason P. Thomas, *Juvenile Justice in Transition—A New Juvenile Code for North Carolina*, 16 Wake Forest L. Rev. 1, 17 (1980); N.C. Gen. Stat. § 7A-574, 7A-576 (1995). Only under limited circumstances may an undisciplined juvenile be held in secure custody for twenty-four to seventy-two hours. *See* N.C. Gen. Stat. § 7A-574(b)(5)-(7) (1995).

This Court has found an express legislative intent to avoid committing undisciplined juveniles into state custody, *In re Jones*, 59 N.C.

App. 547, 297 S.E.2d 168 (1982). A finding that a juvenile is in criminal contempt for violating a court order does not provide grounds for finding the juvenile "delinquent" for which commitment to the Division of Youth Services is authorized. *Id.* (the legislature only intended criminal activity to provide a basis for a finding of delinquency).

> The provision which would allow an undisciplined child to become a delinquent by merely violating probation without committing a crime was deleted from the statute effective 1 July 1978. . . . The amendment of former statute G.S. 7A-278(2), removing the violation of probation from the definition of delinquent child, indicates an intent that only criminal activity could provide the basis for an adjudication of delinquency. The legislative purpose in removing probation violations as the basis for adjudications of delinquency would be frustrated if the courts take those very same violations, treat them as criminal contempt, and then base adjudications of delinquency on the contempt proceedings.

*Id.* at 549, 297 S.E.2d at 169. Thus, committing Ebony Robinson to the New Hanover Regional Detention Center violated the legislative intent of the Juvenile Code, and the district court had no jurisdiction to summarily commit her under the contempt power of G.S. § 110-44.4 (1997), without duly considering the Juvenile Code.[3]

A final question remains: how does the Parental Control Act, passed in 1969, relate to the Revised Juvenile Code of 1979? The General Assembly intended the more specific Juvenile Code to operate as the exclusive provision for the commitment of juveniles alleged to be "delinquent, undisciplined, abused, neglected, or dependent." Such additional procedures are not required, under the Parental Control Act, to restrain adult defendants, like Julio Esquilina in this case, from harboring a child of any age, or to enforce parental control over defendant minors aged sixteen and seventeen who refuse to comply with parental direction. With respect to such defendants, G.S. § 110-44.4 clearly authorizes the unrestricted exercise of the court's contempt power. N.C. Gen. Stat. § 110-44.4 (1997). Acting in conjunction, with their respective jurisdictional age limits and procedures, both acts offer parents a means to recover runaway children and enforce their authority as parents over their children. Undisciplined and delinquent children under the age of sixteen receive the addi-

---

3. However, after 1 July 1999, G.S. § 7B-205 provides for punishment for undisciplined juveniles for contempt of court. 1998 N.C. Sess. Laws 1998-202.

tional consideration and protection afforded them under the Juvenile Code.

The dissent interprets our holding as a repeal of the Parental Control Act by implication. We believe this characterization to be erroneous. The trial court's general enforcement of the Parental Control Act order contradicted the more recent and specific provisions of the Juvenile Code with respect to defendants under the age of sixteen. Under these circumstances, the more specific statute controls. *Meyer v. Walls, supra; McIntyre v. McIntyre, supra; Banks v. County of Buncombe, supra; Stewart v. Bd. of Educ., supra.* In addition, "where a strict literal interpretation of the language of a statute would contravene the manifest purpose of the Legislature, the reason and purpose of the law should control, and the strict letter thereof should be disregarded." *Duncan v. Carpenter & Phillips,* 233 N.C. 422, 64 S.E.2d 410 (1951). We are neither disregarding nor repealing the Parental Control Act, we are simply interpreting its general enforcement provision in light of a more recent and specific statute with exclusive authority over a discrete age group of possible defendants.

The dissent also notes that no petition for secure custody was filed, and concludes that secure custody, G.S. § 7A-574(b), would not have been appropriate in this case. While we agree that secure custody was probably inappropriate in this case, the fact that a child was committed to state custody, without any party requesting such custody, without any of the procedural protections afforded by the Juvenile Code, further demonstrates the importance of exclusive juvenile procedures in keeping non-criminal children out of state detention. The trial court and the dissent both agree that public policy is violated when juveniles are held in adult custody, yet they both ignore equally important legislative and judicial statements, as embodied in the Juvenile Code, that district courts are without the authority to summarily commit juveniles into custody for undisciplined, non-criminal behavior.

For the reasons stated above, we hold that committing the fifteen year old defendant, Ebony Taylor, to the Division of Youth Services for contempt in this case was error. The order of the district court is reversed.

Reversed.

Judge LEWIS dissents.

TAYLOR v. ROBINSON

[131 N.C. App. 337 (1998)]

Judge WALKER concurs.

Judge Lewis dissenting.

With due respect to the majority, my approach to this case would begin with a review of the statutes that expressly authorize the actions of the district court judge. Section 110-44.1 of the North Carolina General Statutes reads, "Notwithstanding any other provision of law, *any child under 18 years of age*, except as provided in G.S. 110-44.2 and 110-44.3, shall be subject to the supervision and control of [her] parents." N.C. Gen. Stat. § 110-44.1 (1997) (emphasis added). Section 110-44.4 permits parents, guardians, and persons standing in loco parentis to a child to bring a civil action in district court for the purpose of enforcing the provisions of the Parental Control Act. The section provides in relevant part,

> Upon the institution of such action by a verified complaint, **alleging that the defendant child has left home or has left the place where [she] has been residing and refuses to return and comply with the direction and control of the plaintiff**, the court may issue an order directing the child personally to appear before the court at a specified time to be heard in answer to the allegations of the plaintiff and to comply with further orders of the court. . . . Upon the filing of an answer by or on behalf of said child, any district court judge holding court in the county or district court district as defined in G.S. 7A-133 where said action was instituted shall have jurisdiction to hear the matter, without a jury, and to make findings of fact, conclusions of law, and render judgment thereon. . . . The district judge issuing the original order or the district judge hearing the matter after answer has been filed shall also have authority to order that any person named defendant in the order or judgment shall not harbor, keep, or allow the defendant child to remain on said person's premises or in said person's home. **Failure of any defendant to comply with the terms of said order or judgment shall be punishable as for contempt.**

N.C. Gen. Stat. § 110-44.4 (1997) (emphasis added).

In this case, Tracey Taylor, the mother of fifteen-year-old Ebony Robinson, brought a civil action in district court alleging that her daughter had left home and refused to return. The district court judge ordered the Onslow County Sheriff to seize Ebony and bring her to court. Ebony was in fact seized, and after a hearing, the district court

judge entered a "Temporary Order for Parental Control" on 22 May 1997. The court found that Ebony "ha[d] previously removed herself from [her] parents' residence," ordered Ebony to submit to the supervision and control of her mother, and decreed that any person who violated the court's order would be compelled to show cause why she should not be held in contempt. The civil action filed by Ms. Taylor, the proceedings that followed, and the district court judge's disposition of the case were all expressly authorized by G.S. 110-44.4.

At a hearing on 5 June 1997, the district court judge reviewed the Temporary Order for Parental Control. It found that Ebony was in willful violation of the prior court order and concluded that she was in contempt. DYS has not assigned error to either of these findings.

Pursuant to the authority expressly conferred by section 110-44.1, the district court judge punished Ebony "as for contempt," ordering her detained for thirty days, twenty days suspended. *See* N.C. Gen. Stat. § 5A-11(3) (Cum. Supp. 1997) (stating that willful disobedience of a court order constitutes criminal contempt); § 5A-12 (Cum. Supp. 1997) (authorizing imprisonment as punishment for criminal contempt). Because Ebony was only fifteen years old when the contempt order was entered, it would have violated the public policy of this State and of the United States to place her in an adult prison. *See* N.C. Gen. Stat. § 7A-693 (1995) ("[T]o every extent possible, it shall be the policy of [this State] that *no juvenile or delinquent juvenile* shall be placed or detained in any prison, jail, or lockup nor be detained or transported in association with criminal, vicious or dissolute persons." (emphasis added)); 42 U.S.C. § 5633 (12) through (14) (1994) (conditioning states' eligibility for certain federal funding on states' agreement not to confine juveniles "in any jail or lock-up for adults"). In keeping with these policies, the district court judge ordered that Ebony be committed to the New Hanover Regional Detention Center, a juvenile detention facility.

I see no reason to overturn the court's ruling, based as it is on express statutory authority and on established public policy. According to section 110-44.4, persons who violate court orders issued thereunder may be punished "as for contempt," without limitation. To hold, as does the majority, that a district court judge cannot punish a juvenile contemnor by ordering imprisonment seriously diminishes the efficacy of court orders under the Parental Control Act. Furthermore, the choice to place Ebony in a detention facility separate from an adult prison was in keeping with the custody provisions of the Revised Juvenile Code: The Code states that certain juve-

nile offenders found to be delinquent or undisciplined may be held in "secure custody," but only in facilities separate from adult penal institutions. *See* N.C. Gen. Stat. § 7A-576(b) (Cum. Supp. 1997).

In its appellate brief, DYS makes the following assertion: "There are only two portals of entry into juvenile detention homes. These are set forth in Chapter 7A, Article 46, N.C. Gen. Stat. §§ 7A-571 et seq. (Temporary Custody; Secure and Nonsecure Custody; Custody Hearings), and Chapter 7A, Article 49, N.C. Gen. Stat. §§ 7A-608 et seq. (Transfer to Superior Court)." DYS does not cite a single statute or case to support this assertion. This is because no such statute or case exists.

DYS correctly notes that this case has nothing to do with General Statutes Chapter 7A, Article 49: Under this Article, once a district court judge has transferred, to superior court, jurisdiction over a juvenile alleged to have committed a felony, the district court judge must order that the juvenile be held in a detention home pending trial. N.C. Gen. Stat. § 7A-611 (1995). It does not follow, however, as DYS claims, that "Article 46 [of Chapter 7A] is the only other possible source of authority for the district court's order" that Ebony Robinson be committed to the New Hanover Regional Detention Center. A more comprehensive look at the North Carolina Juvenile Code reveals why.

As noted by the majority, the Juvenile Code, codified at sections 7A-516 through 7A-749 of the General Statutes, establishes, among other things, procedures for the disposition of cases "involving a juvenile alleged to be delinquent, undisciplined, abused, neglected, or dependent." N.C. Gen. Stat. § 7A-523(a) (Cum. Supp. 1997). Under the Code, an "intake counselor" must screen all complaints alleging that a juvenile is undisciplined or delinquent. N.C. Gen. Stat. § 7A-530 (1995). The intake counselor must determine whether the complaint should be filed with the district court as a petition, based on a consideration of whether reasonable grounds exist to believe the facts alleged are true, whether the facts alleged constitute a delinquent or undisciplined offense within the jurisdiction of the court, and whether the facts alleged are sufficiently serious to warrant court action. N.C. Gen. Stat. §§ 7A-530, 7A-532 (1995). Upon the approval of the intake counselor or the prosecutor, *see* N.C. Gen. Stat. § 7A-536 (1995), a petition is filed with the district court alleging "the facts which invoke jurisdiction over the juvenile." N.C. Gen. Stat. § 7A-560 (1995).

It is in this context that section 7A-574(b) must be read. This section provides that "**[w]hen a request is made for secure custody**, the judge may order secure custody only where he finds there is a reasonable factual basis to believe **that the juvenile actually committed the offense as alleged in the petition**, and" that one of eight enumerated conditions is met. N.C. Gen. Stat. § 7A-574(b) (emphasis added). By its own terms, section 7A-574(b) applies only to cases in which the district court judge is asked to commit a juvenile to secure custody, based on a petition alleging that the juvenile has committed an offense. This is not such a case.

In this case, a complaint was filed against Ebony Robinson alleging that Ebony had refused to submit to the supervision and control of her mother. The complaint did *not* request that Ebony be committed to secure custody; rather, in accordance with G.S. 110-44.4, the complaint prayed the district court judge to issue an order directing Ebony to reside with plaintiff and to submit to plaintiff's parental control and supervision. It was only later, three weeks after the district court judge issued the order requested, that the case was reviewed and Ebony was found to be in willful violation of the order. For her failure to comply with the decree, she was held in contempt and ordered imprisoned as section 110-44.4 expressly permits. Simply put, section 7A-574(b) does not apply to this case.

The majority holds that the district court judge had no authority to punish Ebony Robinson for criminal contempt by ordering her confinement with DYS. This holding is based on a single provision of the Juvenile Code: "The [district] court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be delinquent, undisciplined, abused, neglected, or dependent." N.C. Gen. Stat. § 7A-523(a) (Cum. Supp. 1997). From this provision—which unquestionably vests the district court with exclusive jurisdiction over the juvenile cases listed—the majority concludes that "the Juvenile Code is the exclusive provision governing the commitment of allegedly undisciplined minors under the age of sixteen." Slip op. at 7. The conclusion does not follow from the premise.

It is one thing to say that the district court, and no other tribunal, is to have exclusive jurisdiction over cases involving juveniles who are alleged to be undisciplined or delinquent: section 7A-523(a) so provides. It is quite another to say that the Juvenile Code provides the exclusive source of statutory authority for adjudicating claims against juveniles who refuse to submit to parental control. There is no statute that so provides.

TAYLOR v. ROBINSON

[131 N.C. App. 337 (1998)]

Despite claims to the contrary, the majority effectively holds that when the Revised Juvenile Code was enacted in 1979, it repealed the Parental Control Act to the extent it applies to children age fifteen and under. The majority so holds despite the fact the Parental Control Act was not expressly repealed when the Revised Juvenile Code was passed, and despite the fact that G.S. 110-44.1 continues to read, "Notwithstanding any other provision of law, *any child under 18 years of age* . . . shall be subject to the supervision and control of [her] parents" (emphasis added).

It has been the law in North Carolina since at least 1849 that the repeal of statutes by implication is disfavored. *See, e.g., State v. Woodside,* 31 N.C. 496, 500 (1849); *Winslow v. Morton,* 118 N.C. 486, 493, 24 S.E. 417, 418-19 (1896); *Person v. Garrett,* 280 N.C. 163, 165-66, 184 S.E.2d 873, 874 (1971); *Empire Power Co. v. N.C. Dept. of E.H.N.R.,* 337 N.C. 569, 593, 447 S.E.2d 768, 782 (1994). " '[T]here is a presumption against inconsistency, and when there are two or more statutes on the same subject, in the absence of an express repealing clause, they are to be harmonized and every part allowed significance, if it can be done by fair and reasonable interpretation.' " *Empire Power,* 337 N.C. at 593, 447 S.E.2d at 782 (quoting *In re Miller,* 243 N.C. 509, 514, 91 S.E.2d 241, 245 (1956)). I find nothing in the Juvenile Code that necessitates a finding that the Parental Control Act has been implicitly repealed to the extent it applies to children under the age of sixteen.

This case does not, moreover, provide the occasion to apply the rule of construction favoring a specific statute over a general statute. The rule set forth by our Supreme Court is that, where two statutes are *necessarily* repugnant to one another in some respect, the specific statute prevails over the general. *Krauss,* 347 N.C. at 378, 493 S.E.2d at 433. We do not in this case confront two statutes, one specific and one general, in necessary conflict with each other. Instead, we have before us two sets of statutes, the Juvenile Code and the Parental Control Act, which specifically address different proceedings and different remedies sought, neither of which inherently conflicts with the other. The majority perceives a clash between the Code and the Act, but I see none.

I believe it was fully within the power of the district court to punish Ebony Robinson for contempt of court by ordering her commitment with DYS. I respectfully dissent.